### SCHMIKLER v. PETERSIME INCUBATOR CO.

Civil Action No. 6359.

District Court, D. Massachusetts.
April 8, 1948.

Morris Michelson and Morris D. Slovin, both of Boston, Mass., for plaintiff.

Joseph N. Welch and Hale & Dorr, all of Boston, Mass., for defendant.

HEALEY, District Judge.

This matter came on for hearing on the defendant's motions to dismiss the plaintiff's action. The grounds stated in one of the motions is as follows:

"1. The Court lacks jurisdiction over the subject matter because the amount of damages, exclusive of interest and costs, does not exceed the sum of three thousand dollars ($3,000).

"2. The Court lacks jurisdiction over the person because the defendant is not a citizen of the Commonwealth of Massachusetts and is not engaged in carrying on a business in the Commonwealth of Massachusetts.

"3. There was an insufficiency of service of process in that the summons and complaint were delivered to one Austin Callander, and said Austin Callander did not have sufficient authority to represent the defendant so as to make service of process upon him service of process upon the defendant."

The other motion is identical, except that the name of Lester J. Bangs, defendant's eastern representative, is substituted for that of Austin Callander.

At the hearing, counsel for the defendant waived its allegations as to the lack of the jurisdictional amount, for the purposes of this hearing only, and without prejudice to renew it if this motion to dismiss is denied. This court will, therefore, confine itself to a consideration of only the grounds numbered "2" and "3" above.

Findings of Fact.

1. The plaintiff is a citizen and resident of Whitman, Massachusetts.

2. The defendant is a corporation duly organized under the laws of Ohio, with its usual place of business in Gettysburg, Ohio.

3. On January 16, 1947, plaintiff filed this complaint in this action, seeking to recover damages allegedly sustained by him as a result of a breach of a warranty made by the defendant that an incubator sold by the defendant to the plaintiff was fit for the purpose for which the plaintiff intended to use it, and that said incubator was in good condition and had no defective parts.

4. On January 17, 1947, a deputy United States marshal attempted to serve a copy of the summons issued in this action, together with a copy of the complaint, on the defendant, by giving in hand to one Austin Callander, representative of the defendant at the Boston Poultry Show, Boston Garden, North Station, Boston.

5. On January 23, 1948, a deputy United States marshal served a copy of the summons issued in this action, together with a copy of the complaint, on the defendant by giving in hand to Lester Banks, agent in

charge of its business at Mechanics Building, Huntington Avenue, Boston.

6. The defendant manufactures incubators and parts for incubators in its factory in Gettysburg, Ohio. These incubators are sold throughout the United States. The defendant has no factory, warehouse, office or store in Massachusetts. Its name is not displayed on any place of business in Massachusetts, nor is it to be found in any telephone directory in this state.

7. Austin Callander was employed by the defendant to sell and service incubators in the New England states. His home is in Bridgewater, Massachusetts. He is employed by the defendant on a straight commission basis on sales. He owns his own car, and pays for its expense himself without reimbursement by the defendant, unless he is directed by the defendant to perform some special work for it. His name and picture have appeared in advertisements of Petersime Incubators in certain poultry publications, but he does not display the Petersime name on any sign at his home, from which he operates. He keeps various replacement parts for Petersime incubators in his home. Those parts are owned by Callander, being purchased from the defendant. If he replaces a part in an incubator while servicing it for the defendant, the defendant reimburses him by supplying him with another part. Callander performs only light service, all heavy service is done by workmen sent from defendant's plant in Gettysburg, Ohio.

8. Orders for Petersime incubators are taken by Callander in the following manner: The purchaser signs in triplicate a contract setting forth the type of incubator desired and its price. Among the clauses of the contracts are the following:

"It is agreed that the title and right to possession of the herein described property shall remain in Petersime Incubator Co., until the entire purchase price has been paid, together with interest as provided whereon title and ownership shall be vested in the purchaser * * *."

"It is agreed that purchaser keep incubator in good condition and in its original construction, not permitting service on same other than Petersime representatives; * * *."

After the contract was signed, the purchaser retained one copy and two copies were transmitted to the defendant. If the defendant's president approved of the terms, etc., he would sign the contract. No sale was final unless it was approved by the defendant's president at the factory. If the president approved of the contract, the original, signed by both parties, would be recorded in the clerk's office of the city or town where the purchaser lives. The other copy went to the files of the defendant, where it was kept under the purchaser's name until the payments were completed.

9. All time payments were made by the purchaser directly to the defendant in Ohio.

10. Callander on making some sales, took in trade secondhand incubators as a down payment on the purchase price.

11. Callander, during much of the time he has been employed by the defendant, has also done other work, although at the time he was served, his sole employment was with the defendant.

12. When a sale was completed, the incubator would be shipped to Massachusetts by freight and installed by Callander, or, in the case of large incubators, they would be shipped by truck and installed by employees of the defendant who came here with the truck.

13. Lester J. Bangs was in charge of sales and service for the defendant in their eastern territory. He was paid a weekly salary and expenses. He comes to Massachusetts from one to six times a year—one of which occasions is to be at the poultry show. He attended the poultry show to meet customers, demonstrate incubators and to make sales.

14. At their exhibits at the poultry show, the defendant pays for the exhibition space, provides for the erection of a suitable booth and ships incubators and parts here for display purposes. Both Bangs and Callander attend the show in the hope of making sales and to demonstrate the defendant's products and meet its customers.

## Discussion.

Federal Rules of Civil Procedure, rule 4(d), 28 U.S.C.A. following section 723c, provides in part as follows:

"* * * Service shall be made as follows: * * *

"(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

Massachusetts General Laws (Ter. Ed.), Chapter 223, Section 38, as amended by St. 1939, c. 451, § 61, is as follows:

"In an action against a foreign corporation, except an insurance company, which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section relative to service on domestic corporations in general, instead of upon the commissioner of corporations and taxation under section three or section three A of chapter one hundred and eighty-one."

The relevant part of Section 37 of Chapter 223, Massachusetts General Laws (Ter. Ed.), as amended by St. 1945, c. 306, is as follows:

"* * * In an action against a domestic corporation * * * service shall be made upon the president, treasurer, clerk, cashier, secretary, agent or other officer in charge of its business, or, if no such officer is found within the county, upon any member of the corporation. * * *"

In my opinion, Callander was an agent in charge of the defendant's business in Massachusetts, and not an independent contractor. Although he had no power to make binding sales contracts, he solicited business for the defendant, determined the value of trade-ins, serviced incubators during the one year guaranty period, and sometimes aided in the installation of machines sold to purchasers in this state. Thus he was a proper person upon whom to make service on the defendant. General Laws of Massachusetts (Ter. Ed.), Chapter 223, Section 37, as amended.

The remaining question is whether the defendant either through the activities of Callander, or through the acts of its other agents, officers, or employees, may be found to have been "present" within Massachusetts so as to render service on it valid.

There can be no question but that the defendant was "soliciting business" in this commonwealth, within the meaning of the Massachusetts statute, (General Laws of Massachusetts (Ter. Ed.), Chapter 223, Section 38, as amended). However, since there may be some question, on constitutional grounds, as to the validity of service on a foreign corporation which merely solicits business within a state without carrying on other activities there, International Harvester Company v. Kentucky, 234 U.S. 579, 586, 587, 34 S.Ct. 944, 58 L.Ed. 1479; Green v. Chicago, Burlington & Quincy Railroad Company, 205 U.S. 530, 533, 27 S.Ct. 595, 51 L.Ed. 916, it seems preferable to determine whether or not the defendant was "engaging in business" in Massachusetts. General Laws of Massachusetts (Ter. Ed.) Chapter 223, Section 38.

As I have already found, the defendant's agent resided in Massachusetts. He solicited business for the defendant, helped in the installation of incubators, serviced them during the one year guaranty period, and made periodic calls on defendant's customers in this state. Although the defendant had no warehouse here, for all practical purposes, it maintained a supply of replacement parts here through its arrangement with Callander. While it had no store or office in Massachusetts, by its advertising in poultry magazines which were sold here, it held Callander out as its agent for sales and service. It also displayed and demonstrated its products annually at the poultry show in Boston where it also solicited customers.

■ With the exception of its activities at the poultry show, its activities here were continuous and systematic. In my opinion, they constituted "engaging in business" so as to give this court jurisdiction over the defendant under the Massachusetts statute.

In the light of the opinion of the Supreme Court in International Shoe Company v. State of Washington et al., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, I can see no constitutional bar to service on the defendant. The defendant enjoys the benefits and protection of the laws of Massachusetts in carrying on its activities here. It should, therefore, be amenable to service here, particularly in a suit like the present one, which arises out of its activities in this state.

Because the service on Callander was a proper one, it is unnecessary to consider the motion based upon the contention that the service on Bangs was improper.