VIRGINIA MELLO *vs.* THE HAMILTON FIRE INSURANCE
COMPANY.

JUNE 14, 1946.

PRESENT: Flynn C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action of assumpsit, brought by the insured on an insurance policy issued to her by the defendant, to recover for damages to her automobile resulting from an alleged theft of it by her brother, then fifteen years old. In the policy the defendant agreed to pay to her all loss or damage to her automobile "caused by theft, larceny, robbery or pilferage".

At a trial in the superior court, the jury, in accordance with a direction to them by the trial justice, returned a verdict for the plaintiff for $400. The case is now before us on a bill of exceptions by the defendant in which the principal exceptions are to this direction of a verdict and to the denial by the trial justice of a motion by the defendant for the direction of a verdict in its favor.

According to the undisputed evidence the plaintiff, about 6:30 p. m., after using the car in going to see her grandmother, drove it back to her own home, left it in the yard nearby, with the key in the lock, and went upstairs to her home. While she was there, her brother, whom she had not allowed to drive the car and who had not driven it before,

so far as she knew, got into it and drove off without saying anything to her. She did not testify that she had forbidden him to use it.

He testified, without any contradiction, that he lived with his parents and many brothers and sisters in the lower tenement of the same building where the plaintiff lived; that he saw a great deal of her and frequently took rides with her; that he helped an older brother in the care and repair of automobiles and knew how to drive them; that on the day of the accident to his sister's car he took it without saying anything to her; that he was dressed in his work clothes and was just going for a short drive, alone, intending to return very soon. He further testified that, when he got about two or three miles from home, he was going at about twenty-five or thirty miles per hour and hit a bump in the road, which turned the car to the side, and it hit a cement wall. He became unconscious and had to be taken to a hospital. The car was badly damaged.

The trial justice, in discussing the motion for the direction of a verdict for the defendant, stated that "conversion of an automobile and its subsequent destruction by the converter amounts to a theft under the policy." He also stated: "Now if the word theft is to be used strictly in the ordinary sense, an insurance company which sells an insurance policy to protect against theft is perpetrating a fraud on the public, because there probably wouldn't be a half-dozen takings of automobiles in this State in the course of a year which would be taken in such manner that the takers could be prosecuted as thieves." He further stated that "it's this Court's judgment that the word 'theft' as used in this insurance policy means conversion resulting in destruction of the converted article, and that the insurance company is liable under the policy". It was upon this ground that he directed the jury to return a verdict for the plaintiff.

There is some merit in that view, but we think it goes too far in that it practically holds that any taking of an automobile, without the owner's consent, which results in the

automobile's destruction is, as a matter of law, equivalent to "theft" within the meaning of the policy. There is no authority in this state for such a view. This court has, indeed, given to' the word "theft" in a policy, similar to the one in the case at bar, a construction that differentiates it from "larceny" and gives it a more comprehensive connotation. *Brady* v. *Norwich Union Fire Ins. Society, Ltd.*, 47 R. I. 416. But there is nothing in that opinion which indicates that this court held the view which the trial justice took in the instant case.

In line with the view given to the word "theft" in the *Brady* case this court later expressly held that, where an automobile was surreptitiously taken from the owner without his consent and under circumstances tending to show an intent to deprive him permanently of his property, the intention of the taking was decisive of the character of the act and the question of intent was for the jury. *The Morris Plan Co.* v. *Firemen's Fund Ins. Co.*, 49 R. I. 159. In that case, at the conclusion of plaintiff's evidence, a verdict was directed for the defendant but this court reversed the superior court for the reason above stated and ordered a new trial.

We again had occasion to consider the scope of the word "theft" in *Hawkins* v. *Agricultural Ins. Co.*, 58 R. I. 40. In that case the plaintiff had rented his automobile to another person for his use for eight hours. At the end of the rental period the automobile was not returned nor was any word received from the person who rented it. The next day plaintiff notified his insurer. Later it was learned that the automobile had been driven to Texas and that the person who had rented it was in the custody of police. Nothing was done by the insurer to bring the automobile back to this state, as the facts, in its opinion, did not show a theft under the policy. On the plaintiff's evidence the superior court ordered a nonsuit. This court, on review, held the superior court in error on the ground that the plaintiff's evidence entitled him to go to the jury on the question whether a theft had, in fact, been committed. In our opinion in that

case, after referring to the *Brady* case, *supra,* and discussing a number of cases from other jurisdictions, we said that "the evidence should have been submitted to the jury on the question whether McArdle had obtained possession of the car with the criminal intent of permanently depriving the plaintiff of it and therefore, by his theft of it, had inflicted on the plaintiff a loss within the coverage of the policy."

On the whole we think that a careful reading of those cases will demonstrate that this court has consistently adhered to a broad view of the word theft in a policy of this kind, but that it has nowhere said expressly or impliedly that it was equivalent to a mere taking without consent. Under the view of those cases, as we understand them, the plaintiff must prove a taking without consent, and an intention, though not necessarily at the time of the taking, to deprive the owner permanently of his property in the thing taken. The evidence to prove such intention is thus not restricted as it is in common-law larceny. If the evidence shows that after the taking the use of the car was such as to deprive the owner of his property, it will be for the jury to say whether such evidence convinces them that the taker had, in fact, the intention to so deprive the owner, and not for the court to so hold as a matter of law.

In *State* v. *South,* 28 N. J. L. 28, which was a criminal prosecution for larceny, the court expounded the above idea in these words which we think are more especially applicable to our problem than to the one before that court: "If, on the other hand, the prisoner took the goods with a view only to a *temporary user,* intending to keep them for a short time only, and to return them to the owner unimpaired, an intent thereby wholly to deprive the owner cannot, generally speaking, be deemed proved . . . . But if he took them with a view only to a temporary user, intending, however, to keep them for a very unreasonable time, or to use them in a reckless, wanton, or injurious manner, and then to leave it to mere chance whether the owner ever recovered them or no, and if he recovered them at all, would probably recover

them in a damaged or altered condition, such a taking would seem, in common sense, to be ample evidence of an intent wholly to deprive the owner of his property."

For the reasons above stated, the defendant's exception to the granting of the plaintiff's motion for a directed verdict is sustained, its exception to the denial of its motion for a directed verdict is overruled, and the case is remitted to the superior court for a new trial.

CAPOTOSTO, J., concurring in result. I agree that a new trial should be granted but I am unable to concur in the majority opinion either as to the grounds assigned for granting a new trial or as to the real issues that should be submitted to a jury for determination at such a trial. The decisive language in *this* policy is unusual in that the words "theft" and "larceny", without exception or definition in either instance, are both used by the insurer in the coverage clause. As the policy in the instant case was issued in this state, it must be construed according to the law of this state. *Hawkins* v. *Agricultural Ins. Co.,* 58 R. I. 40, 48. The word theft is not defined in our statutes, nor is there any definition of that word anywhere in the insurance contract under consideration.

It is well known that the word theft is not a word of art, and that in common speech it is a broader and looser word than larceny. Where the word theft alone was used in a policy that term was construed by this court to cover not only larceny at common law but also such offenses as were made larceny by statute. *Brady* v. *Norwich Union Fire Ins. Society, Ltd.,* 47 R. I. 416. But the *Brady* case does not say, expressly or by implication, that the word theft as commonly understood is limited in its meaning to larceny at common law or by statute; and certainly does not hold that the word theft is so limited when both theft and larceny are used together in the same policy. It is therefore reasonable to infer that when both the words theft and larceny are used in the coverage clause in the same policy, as in the instant case, the party selecting and adopting those words must have in-

tended to extend to the insured a more liberal coverage than if the word larceny alone were used in the policy.

The real question in the instant case is what is the meaning of the word theft in this policy. In my judgment, the insurer, in using the language that it did, created an ambiguity which, in case of doubt, will be construed against it as the party that created the ambiguity. In this state any taking of an automobile by a wrongdoer with the present intent, express or implied, permanently to deprive the owner of his property is larceny at common law or made so by statute. The only other cognate offense, with reference to the taking of an automobile, which includes all the elements of larceny except the present intent of permanently depriving the owner of his property, is where there is an unlawful taking of an automobile without the owner's consent. Section 45, chap. 608, G. L. 1938, provides a heavy penalty, by fine or imprisonment or both, in case a person "shall take, drive, operate or use, any motor vehicle in the absence of the owner and without the owner's consent."

The taking of an automobile without the owner's consent, which is not deemed to be larceny under our law, is a matter of common occurrence and is frequently as detrimental to the owner as if larceny had been committed. A person who misses his automobile does not stop to inquire whether it was taken by a wrongdoer with the intent of permanently depriving him of his property, or whether it was taken for temporary use for an unknown and indefinite period. To him the automobile, in common speech, was "stolen" and he would probably report its loss in that term to the police. He would further ordinarily describe the wrongdoer as a "thief", and the act done by him as a "theft".

In the circumstances of this case I am of the opinion that the selection and use by the insurer of both theft and larceny in the coverage clause of this policy, without an exception or definition of the meaning of either of those words, would reasonably lead a person, who understands language as ordinarily used in common speech, to believe that the

policy, as written, covered any and all acts in violation of the criminal law that would unlawfully deprive him of his property, whether permanently or for an indefinite time. The word larceny in the policy under consideration should not be rejected as surplusage, for I cannot believe that the insurer used unnecessary language to define the all-important matter of the coverage intended by this contract of insurance. By using both theft and larceny in the coverage clause of this policy, it is reasonable, as above stated, to believe that such language was intended to extend to the insured a broader coverage than if the word larceny alone had been used; and that the only other coverage under the word theft, which would not be included under the word larceny, is the taking of an automobile without the owner's consent in violation of the above-cited statute.

No case is cited, nor have I found one, where the words theft and larceny are used in the coverage clause of the same policy, as in the instant case, and where the word theft is limited as in the majority opinion. All cases therein mentioned revolve about the meaning of the word theft when that word alone is used in the policy. The cases from other jurisdictions disagree as to whether the unlawful taking of an automobile without the owner's permission comes within the meaning of the word theft when it is not joined with the word larceny. There is, however, respectable authority to the effect that such offense is covered by a policy in which the word theft, without being joined to the word larceny and without the definition of theft, is used. *Toms* v. *Hartford Fire Ins. Co.,* 63 N. E. 2d (Ohio) 909, and cases cited; *Pennsylvania Indemnity Fire Corp.* v. *Aldridge,* 117 Fed. 2d 774; *Boyle* v. *Yorkshire Ins. Co. Ltd.,* 56 Ont. Law Rep. 564.

In the instant case there is not a shred of evidence from which it can reasonably be inferred that plaintiff's brother intended permanently to deprive her of the automobile. On the contrary, the evidence is conclusive that he took the automobile merely to go for a ride and to return it shortly thereafter. If the words theft and larceny, as used in this

policy without exception or definition, are construed to include the offense of taking an automobile without the owner's consent, then there clearly would be an issue of fact for the jury to determine in the circumstances of this case, namely, whether the automobile was taken by the plaintiff's brother with or without her consent, express or implied.

I am therefore of the opinion that the trial court erred in directing a verdict for the plaintiff and that the case should be remitted to the superior court for a new trial so that a jury may determine the issue of consent as just above indicated.

FLYNN, C. J., concurs in the opinion of Mr. Justice Capotosto.

*Fred Brosco,* for plaintiff.

*John C. McOsker,* for defendant.