Hillsborough,  }
Dec. 2, 1952.  }   No. 4148.

LEON E. TAYLOR *v.* KLENZADE PRODUCTS INC.

518

*Robert E. Earley* and *Charles J. Flynn* (*Mr. Flynn* orally), for the plaintiff.

*McLane, Davis, Carleton & Graf* and *Arthur A. Greene* (*Mr. Greene* orally), for the defendant.

DUNCAN, J.  Under the rule laid down in *Internat. Shoe Co.* v. *Washington,* 326 U. S. 310, the first and third questions transferred by the Trial Court raise essentially the same issue.  If the defendant's activities in New Hampshire were such as to make it reasonable and just to require it to defend this action, it may be held to have been "doing business" here in such a way as to subject it to the jurisdiction of our courts, without violation of the requirements of due process.  *Grace* v. *Company,* 95 N. H. 74.

Whether there was proper service on the defendant will be seen to depend largely upon the determination of the issue presented by the other questions.

If the defendant's contacts within the state were "sufficient . . . to make it reasonable and just, according to our traditional conception of fair play and substantial justice" that it be subjected to suit here (*Internat. Shoe Co.* v. *Washington, supra,* 320), then the first and third questions should be answered in the affirmative. One of the criteria is whether the defendant's activities were "systematic and continuous."  *Id.,* 320.  Another is whether the action is so connected with those activities that the burden upon the defendant of trying the case here is not undue (*id.,* 317) or such as to outweigh the advantages to the plaintiff.  See *Kilpatrick* v. *Texas & P. Ry. Co.,* 166 F. (2d) 788, 790-1; *cert. den.* 335 U. S. 814.  The latter criterion is akin to the question of *forum non conveniens.*  *Ib.*  See *Thistle* v. *Halstead,* 95 N. H. 87; *Jackson* v. *Company,* 86 N. H. 341.  It is not essential that the cause of action arise in New Hampshire, provided it arises out of business done here.  See Note 16 U. Chi. L. Rev. 523, 530, *n.* 41; *French* v. *Gibbs Corp.,* 189 F. (2d) 787.

The defendant maintains that it was not doing business in New Hampshire because its business consisted only of manufacturing in Wisconsin and selling to distributors in Massachusetts, while orders taken by the plaintiff in New Hampshire were accepted in Massachusetts by independent corporations which made the sales to New Hampshire customers, carried their accounts, and bore the credit risks.

It is not disputed that the defendant was engaged in business, and the record indicates that there was more to the system which brought its goods to New Hampshire than merely production in

Wisconsin and distribution through independent wholesalers and retailers. It is not disputed that the distributors in Massachusetts were the exclusive New England distributors. Distribution can be made however only where a market exists, and a market in turn depends upon demand. Demand for the defendant's products in New Hampshire was no doubt encouraged in part by independent dealers here; but it is also true that the plaintiff's duties lay entirely in the field of stimulating and satisfying that demand. He was to seek out new dealers, assist established dealers in satisfying customers, and service the defendant's products in use by customers so that dissatisfaction would be avoided and further demand encouraged. His compensation was measured in part by the size of the demand which he was able to create.

Thus while the actual sales made in New Hampshire were not those of the defendant, the defendant was not content to leave to the distributors the creation of the demand which made them a profitable outlet. The defendant enjoyed the advantages of its own representative in the field. His efforts likewise benefited the distributors, but the defendant's motive is not to be considered wholly altruistic. Benefit to them was benefit to the defendant, and since they were exclusive distributors, unless sales could be made through them, no sales would be made.

In these circumstances, the plaintiff's activities in New Hampshire were the defendant's business, even though they likewise aided the distributors' business. He was required to work with the distributors because of the defendant's method of doing business. Stiller Corporation, which exercised some measure of control over the plaintiff's activities, did business in the name of the defendant's product. The defendant paid the plaintiff's compensation even though Stiller Corporation contributed. The defendant's New England representative likewise supervised the plaintiff's activities, and worked in conjunction with the same distributors. Insofar as the record discloses the business done in New Hampshire was originated and fostered by the defendant's agents. The defendant was not content to have it otherwise. Sales were made through distributors and local dealers; but supervising, assisting and expanding this business was the defendant, in the person of the plaintiff.

In our judgment this activity was of such a character as to make it reasonable and just to subject the defendant to the jurisdiction of the courts of this state. The plaintiff's activity was systematic

and continuous. Similar activity had been carried on for four years before the plaintiff was employed, and so far as appears continued after termination of his employment. There was evidence that it was implemented on at least one occasion by the visit of a nation-wide representative, direct from Beloit. A new dealer in New Hampshire was welcomed by letter from the defendant's home office, furnishing him with its catalogues. The circumstances make it apparent that it was not alone the distributors who did the business in New Hampshire. See *Keppel* v. *E. W. Wiggins Airways*, 103 F. Supp. 911. The plaintiff's activities in the defendant's behalf were sufficient to satisfy the primary requirements of the *International Shoe* case.

A second requirement suggested by *Internat. Shoe Co.* v. *Washington, supra,* is that the suit should "arise out of or [be] connected with the [defendant's] activities within the state." *Id.,* 319. While the pending action does not arise directly out of sale of the defendant's products, and seeks enforcement of no obligation arising from a sale, yet it is accounted for only by the defendant's activities in New Hampshire. Clearly it is "connected with" the business done here, and arises from it in the sense that if the defendant had not hired the plaintiff to carry on its activities here the occasion for the suit would never have arisen. Moreover, the burden upon the defendant in defending the action in New Hampshire does not appear to be undue. Witnesses familiar with the quality of the plaintiff's work and the extent of his activities are in all probability in this vicinity. The record before us suggests no reason why the convenience of the parties and the ends of justice will better be served by trial elsewhere. *Thistle* v. *Halstead, supra.*

Comparison of the circumstances of this case with those of other decided cases furnishes no certain guide to application of the principles involved. The decisions are numerous, and the circumstances as varied. *Frene* v. *Louisville Cement Co.,* 134 F. (2d) 511, decided before the *International Shoe* case, and extensively relied upon by the plaintiff, is of interest. Other cases, decided since the *International Shoe* case, indicate the manner in which its principles have been applied. *Bomze* v. *Nardis Sportswear,* 165 F. (2d) 33; *French* v. *Gibbs Corp.,* 189 F. (2d) 787; *Marlow* v. *Hinman Milking Mach. Co.,* 7 F. R. D. 751; *Schmikler* v. *Petersime Incubator Co.,* 177 F. (2d) 983; *State* v. *Ford Motor Co.,* 208 S. C. 379. See also, Note 16 U Chi. L. Rev., *supra,* 525, 533; *Nichols* v. *Cowles Magazine,* 103 F. Supp. 864.

The second question transferred raises the question of whether the power of the court has been properly invoked, and specifically whether Benjamin Stonoga was an "agent" of the defendant "having . . . charge of any of the business of the corporation," within the meaning of the statute. R. L., c. 387, s. 13. Stonoga described himself as a "sales technician" and "technical service man." His duties were similar to those of the plaintiff, but he was the plaintiff's supervisor. It is found by the Trial Court that he was the defendant's New England representative. The conclusion having been reached that the defendant was doing business in New Hampshire, it follows on this record that Stonoga was the agent "having charge" of the defendant's business here. *Schmikler* v. *Petersime Incubator Co.*, 77 F. Supp. 11, 14; s. c., 177 F. (2d) 983, *supra; Bomze* v. *Nardis Sportswear, supra,* 37. He was clearly the defendant's agent, and service upon him was calculated to give notice to the defendant of the pending action. See *International Shoe Co.* v. *Washington, supra; Marlow* v. *Hinman Milking Mach. Co., supra.* Service was made within the jurisdiction while Stonoga was engaged in the defendant's business. The service complied with the statute, and was sufficient to afford jurisdiction over the defendant corporation, *in personam.* Restatement, Judgments, *ss.* 6, 30, *comment* e. The transferred questions are answered in the affirmative.

*Case discharged.*

All concurred.