W. H. ELLIOTT & SONS CO., Inc.

v.

E. & F. KING & CO., Incorporated,
and
Nuodex Products Co., Inc.
Civ. A. No. 1465.

United States District Court
D. New Hampshire.

April 18, 1956.

McLane, Carleton, Graf, Greene & Brown, Stanley M. Brown, Manchester, N. H., for plaintiff.

Upton, Sanders & Upton, John H. Sanders, Concord, N. H., for E. & F. King & Co.

Sulloway, Jones, Hollis & Godfrey, Frank J. Sulloway, Concord, N. H., for Nuodex Products Co.

CONNOR, District Judge.

This is a civil action brought by W. H. Elliott & Sons Co., Inc. against two foreign corporations, E. & F. King & Co., Incorporated and Nuodex Products Co., Inc. The complaint alleges two theories of recovery on separate counts, the first for negligence, and the second for breach of warranty. Jurisdiction is based on diversity of citizenship, and service of process was made under Rule 4(d)(3) and (7) of Federal Rules of Civil Procedure, 28 U.S.C.A. in the mode prescribed by the statutory laws of this state. RSA 300:11. Venue for this court is established by the fact that the plaintiff is a resident of New Hampshire.

Each defendant filed a motion to dismiss, that of defendant King Company being on the sole ground that it was a foreign corporation, not doing business in the District of New Hampshire, and hence not subject to service of process here. This motion has been waived. The defendant Nuodex Products Co. moved to dismiss upon two grounds, the first, that the complaint failed to state a claim upon which relief could be granted, and second, that Nuodex is a foreign corporation, not doing business in the State of New Hampshire, and therefore not subject to service of process in this district. Upon hearing, the court denied the first part of the motion. A further hearing was had on the question of jurisdiction. Prior thereto, the defendant King Company answered to the merits, and filed a cross-claim against Nuodex, alleging that Nuodex was doing business within the state of New Hampshire and subject to the jurisdiction of this court.

The hearing was limited to two issues: (1) whether the defendant Nuodex was transacting business in New Hampshire so as to be subject to service of process within this district, and (2) whether the defendant Nuodex has waived its right to contest the question by previously arguing and submitting for decision the issue of whether the plaintiff states a claim upon which relief can be granted.

Findings of Fact.

The plaintiff in this action, W. H. Elliott & Sons Co., Inc., hereinafter referred to as Elliott, is a New Hampshire corporation, having its usual place of business in Madbury, New Hampshire. The defendants, E. & F. King & Co., Incorporated, hereinafter referred to as King, and Nuodex Products Co., Inc., hereinafter referred to as Nuodex, are corporations chartered in Massachusetts and New York, respectively. The plaintiff alleges that it suffered substantial property damage due to a product, Super-Adit, manufactured by defendant Nuodex, and added by defendant King to greenhouse paint which King sold to the plaintiff.

Nuodex is a manufacturer of special-purpose chemicals and has its usual place of business in New Jersey. As its products are used chiefly by manufacturers, Nuodex does not customarily sell through the retail market. Instead, its sales in the United States are primarily, although not exclusively, entrusted to seventeen corporate sales representatives whose activities are supervised by six regional Nuodex sales managers. In the region which includes New Hampshire, Nuodex' sales representative is D. H. Litter Company (hereinafter referred to as Litter), a New York corporation, having a branch office in Allston, Massachusetts. Besides representing Nuodex, Litter has at least seven other accounts, mostly with chemical concerns. It is an independent corporation, and Nuodex has no financial interest in it or any control over it. Litter's payment from Nuodex is in the form of a five per cent commission, and its soliciting personnel are its own employees who are paid directly by it.

Litter's activity in New Hampshire on Nuodex' behalf has been carried on by a

single employee. He regularly contacted and solicited all business firms in this state known to have a present or prospective interest in any of Nuodex' products. In order to help Litter stimulate sales, Nuodex furnished it with advertising material and samples. On behalf of Nuodex, the salesman gave customers such technical advice and assistance as he could. On at least two occasions, the New England divisional manager of Litter came into New Hampshire to confer in reference to business pertaining to Nuodex. Although the salesman would occasionally receive an order from a particular customer, the customers would generally forward the order directly to Nuodex, which, in turn, shipped the product to the customer, and Nuodex alone determined whether the purchase could be made on credit. The products promoted in New Hampshire by Litter consisted, at one time or another, of most of Nuodex' output, including Super-Adit, the product here complained of.

On its part, Nuodex carried on few activities independent of Litter. It advertised in various trade journals which circulated in New Hampshire. It sometimes mailed samples directly to buyers, since it maintained a mailing list of all its customers, including those in this state. In one instance, Nuodex sent a technician from its New York laboratory to assist a local firm in solving some fabric-treating problems. Nuodex' most overt act was to register several of its products under the terms of a New Hampshire statute which provides that "it shall be unlawful for any person to distribute, sell, or offer for sale within this state * * * any economic poison which has not been registered * * *." RSA 438:2.

The product here complained of, Super-Adit, was sold by Litter to King in Massachusetts. King subsequently added this product to a special paint which it was selling for use in greenhouses. While there is no evidence that Elliott purchased this paint directly from King, the present state of the pleadings discloses this to be so. Similarly, there is no evidence that either Nuodex or Litter sold it to the plaintiff, nor is such asserted in either the complaint or answer.

### Conclusions and Rulings.

The essential question here presented, whether a foreign corporation is subject to service of process, is one of substance. Canvas Fabricators, Inc., v. William E. Hooper & Sons Co., 7 Cir., 1952, 199 F.2d 485, 488. Since there is no federal statute applicable and this is a diversity case, it follows that the issue must be determined by state law, as in matters of substance this court is "in effect, only another court of the State * * *." Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079. Such is the rule of this circuit. Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193; Kelley v. Delaware, L. & W. R. Co., 1 Cir., 1948, 170 F.2d 195; see also Canvas Fabricators, Inc., v. Hooper & Sons Co., supra, 199 F.2d 486; Olshansky v. Thyer Mfg. Corp., D.C.N.D.Ill.1952, 13 F.R.D. 227, 230; Read v. Corbitt Co., D.C.E.D.Pa. 1950, 10 F.R.D. 125. And this position is further enforced by the fact that the validity of the service of process is predicated upon a state statute.

Despite the foregoing, it has been urged upon this court that this case is governed, not by local law, but by the rule laid down in International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. In that case, the Supreme Court, brushing aside the old distinctions of "presence" and "doing business," announced that due process now requires only that a foreign corporation maintain such minimum standards within the state which is asserting jurisdiction, so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." Id., 326 U.S. 316, 66 S.Ct. 158. In formulating this new "test", the Supreme Court was setting limitations upon state courts and was not defining the lengths to which a federal court must go in asserting jurisdic-

tion over a foreign corporation. If International Shoe applies to federal courts at all, it applies when the federal court is expounding state law in a diversity case by laying down due process limitations upon the scope of its jurisdiction. A possible reason for the parties to the action urging an opposite view upon this court is found in the language of Grace v. Procter & Gamble Company, 95 N.H. 74, 57 A.2d 619, 621. There, the court quotes an earlier New Hampshire decision [Campbell v. United States Radiator Corp., 86 N.H. 310, 167 A. 558] to the effect that the " 'question is one of federal law' ", and goes on to say that it considers "federal decisions as controlling rather than convincing." Id., 95 N.H. 76, 57 A.2d 621. This statement was taken to mean that federal law and not state law decides whether or not New Hampshire will exercise jurisdiction over a foreign corporation in a particular case. To accept the language as a statement of the law would be to ignore several other factors. First of all, the basic issue involved in all these cases is the scope of a state statute (in New Hampshire RSA 300:11), and except for the due process limitations placed on it by certain constitutional pronouncements like the International Shoe case, there can hardly be said to be any federal law on the question. Secondly, in a later case, Kenison, C. J., seems to have overruled any such interpretation of the language in Grace v. Procter & Gamble Company, supra, when he pointed out that while "many of the persuasive authorities cited are federal cases, the issue to be decided is one of state law." LaBonte v. American Mercury Magazine, Inc., 98 N.H. 163, 166, 96 A.2d 200, 202, 38 A.L. R.2d 742. Thirdly, the test laid down in International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, supra, must be considered in a case such as this, not because the federal constitutional limits upon the acquisition of jurisdiction by state courts as discussed in that case apply directly to federal courts, but because

federal consequences cannot properly be attached to an unconstitutional state law.

■ Turning now to local law, it appears that the Supreme Court of New Hampshire has passed on the question of the power to serve process upon foreign corporations only three times since the International Shoe case. Grace v. Procter & Gamble Company, supra; Taylor v. Klenzade Products, Inc., 97 N.H. 517, 92 A.2d 910; LaBonte v. American Mercury Magazine, Inc., supra. In the first of these cases, the trial court, after reserving and transferring the question of jurisdiction over a foreign corporation, was directed to "be guided in its findings and ruling by International Shoe Co. v. State of Washington [Office of Unemployment Compensation and Placement], * * *." Grace v. Procter & Gamble Company, supra, 95 N.H. 77, 57 A.2d 621. As a result of this case, New Hampshire adopted the "reasonable and just" test, Id., 95 N.H. 76, 57 A.2d 621, and all previous decisions must be considered as overruled.

■ In laying down the test of "fair play and substantial justice" the Supreme Court of the United States suggested several "criteria" or "standards" which could be used to measure the facts in each case. Some of these have been utilized by the local court in applying the above quoted test. Without losing sight of the basic principle that each case must be decided on its own facts, Favell-Utley Realty Co. v. Harbor Plywood Corp., D.C.N.D. Cal.1950, 94 F.Supp. 96, 98, I feel that I should measure the facts of this case against these standards in reaching my decision.

■ The first criteria suggested both by the Supreme Court of the United States and of New Hampshire, is whether the defendant's activities were "systematic and continuous." International Shoe v. State of Washington, Office of Unemployment Compensation and Placement, supra, 326 U.S. 320, 66 S.Ct. 160; Taylor v. Klenzade Products, Inc., supra, 97 N.H. 519, 92 A.2d 912. The activities carried on in this state by Litter on be-

half of Nuodex were continuous and systematic. Litter's salesman, regularly and systematically, visited various business concerns in New Hampshire, and would attempt to "sell everything for all the companies we represent." It is true that some federal cases have held that "mere solicitation" is not enough. Roberts v. Evans Case Co., 7 Cir., 1955, 218 F.2d 893; Johns v. Bay State Abrasive Products Co., D.C.Md.1950, 89 F.Supp. 654. But these were based upon local law and not upon constitutional principles. On the other hand, Justice Rutledge has observed that no "business man would regard 'selling,' the 'taking of orders,' 'solicitation' as not 'doing business'." Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 516, 146 A.L.R. 926. Commenting upon this, Carter, J., said: "We are in agreement with the conclusion reached by Justice Rutledge and the trend of the courts in the more recent cases that mere solicitation, without more, constitutes doing business within a state when the solicitation is a regular, continuous and substantial course of business." Perkins v. Louisville & N. R. Co., D.C.S.D.Cal.1951, 94 F.Supp. 946, 951; see also, London's, Inc., v. Mack Shirt Corp., D.C.Mass.1953, 114 F.Supp. 883. This trend has met with local approval. In Taylor v. Klenzade Products, Inc., supra, the activity carried on in this state was very similar to that in the case at bar. There, the plaintiff, acting as agent for the defendant, sought out new dealers, helped to service established accounts, and attempted to stimulate new business for the defendant's products. In holding that the defendant was subject to the jurisdiction of New Hampshire courts, the court recognized that solicitation is an essential commercial activity. "Distribution can be made however only where a market exists, and a market in turn depends upon demand." Id., 97 N.H. 520, 92 A.2d 912. "In our judgment this activity was of such a character as to make it reasonable and just to subject the defendant to the jurisdiction of the courts of this state." Id., 97 N.H. 520, 92 A.2d 913.

Once accepting the proposition that solicitation is a commercial activity, recognized by New Hampshire as sufficient to constitute "transacting business" under New Hampshire RSA 300:11(c), we are faced with the problem whether or not the activities of Litter can be attributed to Nuodex. I believe the fact that Litter was a separate and independent corporation and not an "agent" of Nuodex, in the legal sense, is not a bar to service of process upon Nuodex in New Hampshire. In LaBonte v. American Mercury Magazine, Inc., supra, the Supreme Court held the defendant, The American Mercury, subject to service of process, even though all of the activities attributed to the defendant in this state were carried on by the Rumford Press, an independent and separate corporation, which was even less under the direction of American Mercury than Litter was under the direction of Nuodex. Nor is it of any significance that Litter worked for several other companies besides Nuodex. Rumford Press printed many magazines other than the American Mercury. Learned Hand, J., expressed what seems to me to be the best rule when he said: " * * * we cannot see that it was important that the agent worked for several principals." Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 36.

Whether or not it is a violation of due process to hold Nuodex subject to service on account of the activities of an independent corporation, and whether it is of consequence that Litter is not a New Hampshire corporation, are questions to be deferred until the other criteria or standards are resolved. Under the rule of this circuit, the question of due process "is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation." Pulson v. American Rolling Mill Co., supra, 170 F.2d 194.

A second criterion or "standard" suggested by the Supreme Court of the United States and the Supreme Court of New Hampshire is to estimate the in-

convenience "which would result to the corporation from a trial away from its 'home' or principal place of business." International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, supra, 326 U.S. 317, 66 S.Ct. 158; cited and adopted in Taylor v. Klenzade Products, Inc., supra, 97 N.H. 519, 92 A.2d 912. In the case at bar, there seems to be no basis for holding that it would be a hardship to require Nuodex to defend this suit in New Hampshire. In weighing the equities of this case, it appears that it is not inconvenient to hold trial here. Nuodex admits that it can be served with process in Massachusetts, and the few extra miles of travel to the district of the situs imposes no undue burden.

A third criterion suggested in International Shoe, 326 U.S. at page 319, 66 S.Ct. at page 159, is to examine the extent to which the defendant exercised the privilege of conducting activities within New Hampshire, and has enjoyed the benefits and protection of its laws. It appears that the local courts have not adopted this criterion, for nowhere is it discussed. But it could be observed that the defendant did take advantage of the provisions of New Hampshire RSA 438:-3, and registered its products so that they might be legally sold in this state, and, as the United States Supreme Court observes, the "exercise of that privilege may give rise to obligations * * *." International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, supra, 326 U.S. 319, 66 S.Ct. at page 160.

The fourth criterion or standard suggested in the International Shoe case, 326 U.S. at page 319, 66 S.Ct. at page 160, is to examine how far the obligations sued upon arise out of, or are connected with, the activities of the foreign corporation within the state. This test has been adopted by the Supreme Court of New Hampshire. Taylor v. Klenzade Products, Inc., supra, 97 N.H. 519, 521, 92 A.2d 912, 913; LaBonte v. American Mercury Magazine, Inc., supra, 98 N.H. 168, 96 A.2d 203. It probably is most clearly expressed in the Taylor case, where it was said: "It is not essential that the cause of action arise in New Hampshire, provided it arises out of business done here." See 97 N.H. at page 519, 92 A.2d at page 912. I am unable to discover any activity in the state which is connected with the injury here complained of. There is no evidence that King purchased Super-Adit because of solicitation or advertising in New Hampshire, nor is there any evidence that the plaintiff purchased King's paint because of Nuodex' activities within the state. Therefore, I conclude that this fourth "standard" is not met.

This raises the question as to whether all of the standards or criteria must be present in order to confer jurisdiction. In International Shoe, Chief Justice Stone continually refers to these as criteria or "standards." See 326 U.S. at pages 319, 320, 66 S.Ct. at pages 159, 160. But the Supreme Court of New Hampshire, purporting to adopt the language in that case, refers to the criterion that the cause of action arise out of or be connected with activities within the state as a "requirement." Taylor v. Klenzade Products, Inc., supra, 97 N.H. 521, 92 A.2d 913; LaBonte v. American Mercury Magazine, Inc., supra, 98 N.H. 168, 96 A.2d 203. Therefore, it would seem that in New Hampshire there is no jurisdiction unless this "requirement" is met. It does not matter that the court might not have intended to be as strict as this language sounds. The Court of Appeals for this circuit has ruled that "Whether this be so or not we think it is no business for a federal court to meddle in. * * * We think it is the business of the federal court to follow the state court's construction of its own statute * * * until the state court announces a different rule." Pulson v. American Rolling Mill Co., supra, 170 F.2d 195. In the light of the state court's use of the word "requirement," I feel that I have no choice but to rule that this court lacks jurisdiction.

Nor is there any merit in the argument that the state must grant juris-

diction if the federal limits of due process allow. "Provisions for making foreign corporations subject to service in the state is a matter of legislative discretion, and a failure to provide for such service is not a denial of due process." Missouri Pac. R. Co. v. Clarendon Boat Oar Co., 257 U.S. 533, 535, 42 S.Ct. 210, 211, 66 L.Ed. 354; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 440, 72 S.Ct. 413, 96 L.Ed. 485.

 It is jointly urged by the plaintiff and the codefendant that Nuodex, by submitting the first branch of its motion to dismiss [1] on the ground that the complainant fails to state a claim upon which relief can be granted, waived the question of jurisdiction raised in the second branch of its motion.

This contention invites but brief consideration. Whatever support this claim of waiver might have had under common-law practice, the theory has no standing under Rule 12(b) of the Federal Rules of Civil Procedure, which provides in part as follows: "Every defense, in law or fact, to a claim for relief in any pleading, * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (2) lack of jurisdiction over the person, * * * (6) failure to state a claim upon which relief can be granted, * * *. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. * * *"

The authorities seem to be in complete accord that the joining of defenses in a motion creates no waiver. A like situation was before the court in Olshansky v. Thyer Mfg. Corp., supra, and the claim of waiver was rejected. See also, Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir., 1944, 139 F.2d 871, 874; Blank v. Bitker, 7 Cir., 1943, 135 F.2d 962, 966; 2 Moore's Federal Practice, 2262–2264.

Nuodex not being subject to service within this district, the return must be quashed and the action dismissed. An order will be so entered.

---

1. The motion: "Now comes the defendant Nuodex Products Co., Inc. and moves the Court as follows:

"(1) To dismiss the action because the complaint fails to state a claim against the defendant Nuodex Products Co., Inc. upon which relief can be granted.

"(2) To dismiss the action, or in lieu thereof, to quash the return of service of summons on the ground that the defendant Nuodex Products Co., Inc. is a corporation organized under the laws of the State of New York, which has never done business within The State of New Hampshire, and was not and is not subject to service of process within the District of New Hampshire."