243 F.2d 116
 W. H. ELLIOTT & SONS CO., Inc., Plaintiff, Appellant,
v.
NEODEX PRODUCTS CO., Inc., Defendant, Appellee.
E. & F. KING & CO., Incorporated, Cross-Claimant, Appellant,
v.
NUODEX PRODUCTS CO., Inc., Cross-Defendant, Appellee.
 Nos. 5182, 5183.
 United States Court of Appeals First Circuit.
 March 26, 1957.
 
 Stanley M. Brown, Manchester, N. H., McLane, Carleton, Graf, Greene & Brown, Manchester, N.H., on the brief, for W. H. Elliott & Sons Co., Inc.
 Joseph S. Ransmeier, Concord, N.H., Sulloway, Jones, Hollis & Godfrey, Concord, N.H., on the brief, for Nuodex Products Co., Inc.
 Robert W. Upton, Concord, N.H., Upton, Sanders & Upton, Concord, N.H., on the brief, for E. & F. King & Co., inc.
 John H. Sanders, Concord, N.H., for cross-claimant, appellant.
 Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit judges.
 HARTIGAN, Circuit Judge.
 
 
 1
 These are appeals by the plaintiff-appellant, W. H. Elliott & Sons Co., Inc., and the cross-claimant-appellant, E. & F. King & Co., Incorporated, from orders of the United States District Court for the District of New Hampshire, entered on April 18, 1956 and October 25, 1956, quashing the return and dismissing the actions against the defendant and cross-defendant-appellee, Nuodex Products, Co., Inc. Although appellants bring separate appeals from these orders, since they hinge on identical issues we will treat them in this opinion.
 
 
 2
 This is a civil action brought by W. H. Elliott & Sons Co., Inc., a New Hampshire corporation, hereinafter referred to as Elliott, against two foreign corporations, E. & F. King & Co., Incorporated, a Massachusetts corporation, hereinafter referred to as King, and Nuodex Products Co., Inc., a New York corporation, hereinafter referred to as Nuodex. Jurisdiction is based on diversity of citizenship, and service of process was made under Rule 4(d)(3) and (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in the mode prescribed by N.H.Rev.Stat.Ann. c. 300, § 11 (1955).[1] Venue for the district court was established by plaintiff's residence in New Hampshire.
 
 
 3
 Each defendant filed a motion to dismiss. King's motion, later waived, was on the ground that it was a foreign corporation, not doing business in the district of New Hampshire, and hence not subject to service of process there. Nuodex moved to dismiss upon two grounds, the first, that the complaint failed to state a claim upon which relief could be granted, and second, that Nuodex was a foreign corporation not doing business in New Hampshire and therefore not subject to service of process in that district. Upon a hearing on February 28, 1955, the court, in its order of March 29, 1955, denied the first ground of Nuodex' motion. Thereafter, beginning on October 26, 1955, a further hearing was held on the question of jurisdiction. Prior thereto, King answered to the merits and filed a cross-claim against Nuodex, alleging that Nuodex was doing business in New Hampshire and was subject to the jurisdiction of the court.
 
 
 4
 That hearing was limited to two issues: (1) whether Nuodex had waived its right to contest the question of jurisdiction by previously arguing and submitting for decision the issue of whether Elliott's complaint stated a claim upon which relief could be granted and (2) whether Nuodex was transacting business in New Hampshire so as to be subject to service of process there. These same two issues confront us on apopeal.
 
 
 5
 Focusing our attention first upon the issue of waiver, it appears from the record that the district court on February 28, 1955 had a number of motions before it. These were King's and Nuodex' motions to dismiss, King's motion for extension of time to file answer and Elliott's motion for leave to take oral depositions. Elliot sought permission to take certain depositions in order to show that the two defendants, King and Nuodex, were doing business in New Hampshire. Since the court could not hear the branch of Nuodex' motion to dismiss based on the ground of lack of jurisdiction due to the depositions not yet obtained by Elliott, it agreed to hear first the branch of the motion to dismiss based on the ground that the complaint failed to state a claim for which recovery could be granted. The court stated to the attorneys present as follows:
 
 
 6
 '* * * The only pending issue before me at the moment is whether the complaint states a cause or a claim upon which relief can be granted. The second part of the motion, that is, whether or not there is any jurisdiction, is deferred and not heard. The same runs in the same channel as yours does. We will hold that over.'
 
 
 7
 On March 4, 1955 Nuodex filed a written memorandum in support of its motion to dismiss for failure to state a claim. The introductory paragraph of this memorandum states:
 
 
 8
 '1. Defendant Nuodex Products Co., Inc., has moved to dismiss the above-captioned action as to it on two grounds; first, failure of the complaint to state a claim upon which relief can be given, and second, lack of proper service of process and want of jurisdiction in this court. The present memorandum presents the law with respect to the first of the foregoing two grounds of its motion. In presenting it Defendant Nuodex Products Co., Inc. reserves its rights under the jurisdictional objection stated in its motion. * * *'
 
 
 9
 On March 29, 1955, the court entered the following order:
 
 
 10
 'So much of defendant Nuodex Products Co.'s motion as relates to dismissal of the action because the complaint fails to state a claim upon which relief can be granted is denied. The remainder of the motion has not yet been heard.'
 
 
 11
 On October 26, 1955 the court commenced hearing the branch of Nuodex' motion to dismiss based on lack of jurisdiction over it. By its opinion and order of April 18, 1956 the court quashed the return and dismissed Elliott's action on the ground that it did not have jurisdiction over Nuodex. Based on the same hearing, the court of October 25, 1956 dismissed King's cross-claim for the same reason.
 
 
 12
 The district court rejected Elliott's and King's contention, also maintained on appeal, that Nuodex, by submitting the first branch of its motion to dismiss on the ground that the complaint failed to state a claim, waived the question of jurisdiction in the second branch of its motion. In so doing the court said (144 F.Supp. 408):
 
 
 13
 'This contention invites but brief consideration. Whatever support this claim of waiver might have had under common-law practice, the theory has no standing under Rule 12(b) of the Federal Rules of Civil Procedure, which provides in part as follows: 'Every defense, in law or fact, to a claim for relief in any pleading, * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (2) lack of jurisdiction over the person, * * * (6) failure to state a claim upon which relief can be granted, * * *. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. * * *'
 
 
 14
 'The authorities seem to be in complete accord that the joining of defenses in a motion creates no waiver. A like situation was before the court in Olshansky v. Thyer Mfg. Corp., supra (D.C.N.D.Ill.1952, 13 F.R.D. 227), and the claim of waiver was rejected. See also, Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir., 1944, 139 F.2d 871, 874; Blank v. Bitker, 7 Cir., 1943, 135 F.2d 962, 966; 2 Moore's Federal Practice, 2262-2264. * * *'
 
 
 15
 We agree with the district court on this point. Yet, we note that none of the cases brought to our attention contain the identical facts of the instant case. Here Nuodex, having joined in a motion its defenses of failure to state a claim and lack of jurisdiction, invoked an order of the court of March 29, 1955 on the sufficiency of the complaint.
 
 
 16
 It seems that the usual procedure would be for the trial court to decide the jurisdictional branch of such a motion first, since any judgment on the merits of the complaint would be a nullity upon a subsequent finding of no jurisdiction. But it is clear from the record in the instant case that the jurisdictional branch of the motion could not have been heard without certain depositions not yet obtained by Elliott. Further, in the opinion of the lower court trial convenience must have been served by a hearing on the first branch of the motion.
 
 
 17
 The record also disclosed that Nuodex effectively reserved its right to determine the jurisdiction portion of its motion, as appears from its statements to the court and its aforementioned memorandum. That the court recognized this reservation is evidenced by its order of March 29, 1955. Under such circumstances it can only be inferred that Nuodex was pursuing each ground of its motion to dismiss alternatively, and the order of the court as to the first branch of the motion was intended to be final only upon a subsequent finding of jurisdiction. Therefore, we believe there was no waiver of jurisdiction by Nuodex on the facts of this case.
 
 
 18
 We turn next to the issue of whether Nuodex was transacting business in New Hampshire so as to be subject to service of process within the district. The pertinent facts may be stated as found by the district court:
 
 
 19
 'The plaintiff in this action (Elliott), is a New Hampshire corporation, having its usual place of business in Madbury, New Hampshire.
 
 
 20
 The defendants, (King) and (Nuodex) are corporations chartered in Massachusetts and New York, respectively. The plaintiff alleges that it suffered substantial property damage due to a product, Super-Adit, manufactured by defendant Nuodex, and added by defendant King to greenhouse paint which King sold to the plaintiff.
 
 
 21
 'Nuodex is a manufacturer of special-purpose chemicals and has its usual place of business in New Jersey. As its products are used chiefly by manufacturers, Nuodex does not customarily sell through the retail market. Instead, its sales in the United States are primarily, although not exclusively, entrusted to seventeen corporate sales representatives whose activities are supervised by six regional Nuodex sales managers. In the region which includes New Hampshire, Nuodex' sales representative is D. H. Litter Company (hereinafter referred to as Litter), a New York corporation, having a branch office in Allston, Massachusetts. Besides representing Nuodex, Litter has at least seven other accounts, mostly with chemical concerns. It is an independent corporation, and Nuodex has no financial interest in it or any control over it. Litter's payment from Nuodex is in the form of a five per cent commission, and its soliciting personnel are its own employees who are paid directly by it.
 
 
 22
 'Litter's activity in New Hampshire on Nuodex' behalf has been carried on by a single employee. He regularly contacted and solicited all business firms in this state known to have a present or prospective interest in any of Nuodex' products. In order to help Litter stimulate sales, Nuodex furnished it with advertising material and samples. On behalf of Nuodex, the salesman gave customers such technical advice and assistance as he could. On at least two occasions, the New England divisional manager of Litter came into New Hampshire to confer in reference to business pertaining to Nuodex. Although the salesman would occasionally receive an order from a particular customer, the customers would generally forward the order directly to Nuodex, which, in turn, shipped the product to the customer, and Nuodex alone determined whether the purchase could be made on credit. The products promoted in New Hampshire by Litter consisted, at one time or another, of most of Nuodex' output, including Super-Adit, the product here complained of.
 
 
 23
 'On its part, Nuodex carried on few activities independent of Litter. It advertised in various trade journals which circulated in New Hampshire. It sometimes mailed samples directly to buyers, since it maintained a mailing list of all its customers, including those in this state. In one instance, Nuodex sent a technician from its New York laboratory to assist a local firm in solving some fabric-treating problems. Nuodex' most overt act was to register several of its products under the terms of a New Hampshire statute. * * *' N.H.Rev.Stat.Ann. c. 438, § 3 (1955).[2]
 
 
 24
 After reviewing the above facts the district court held that Nuodex was not subject to service in the district of New Hampshire and accordingly ruled that 'the return must be quashed and the action dismissed.'
 
 
 25
 In so holding the court considered the test of 'fair play and substantial justice,' enunciated in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, and sought to apply it as adopted by the Supreme Court of New Hampshire in three cases: LaBonte v. American Mercury Magazine, Inc., 1953, 98 N.H. 163, 96 A.2d 200, 38 A.L.R.2d 742; Taylor v. Klenzade Products, 1952, 97 N.H. 517, 92 A.2d 910; Grace v. Procter & Gamble Co., 1948, 95 N.H. 74, 57 A.2d 619. In this manner, the court reasoned that, since the New Hampshire Supreme Court in the LaBonte and Taylor cases referred to the criterion that the cause of action arise out of or be connected with activities within the state as a 'requirement', there is no jurisdiction in New Hampshire 'unless this 'requirement' is met.' The court's finding concerning this 'requirement' was:
 
 
 26
 'I am unable to discover any activity in the state which is connected with the injury here complained of. There is no evidence that King purchased Super-Adit because of solicitation or advertising in New Hampshire, nor is there any evidence that the plaintiff purchased King's paint because of Nuodex' activities within the state. * * *'
 
 
 27
 Having concluded that this 'requirement' had not been met, the court held that it had no jurisdiction over Nuodex, notwithstanding that it found, as detailed in its opinion, the other 'criteria' of the International Shoe case were fully satisfied.
 
 
 28
 On appeal Elliott and King contend that the district court erred in holding that the criterion or standard that the cause of action arise out of or be connected with activities within the state, presented in the International Shoe case, has been made a 'requirement' by the New Hampshire Supreme Court. Rather, appellants assert that the New Hampshire Supreme Court looks upon all the International Shoe 'standards' as limitations on the due process clause of the Fourteenth Amendment. If this contention were valid, then, under Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, it would not be necessary in order for an action to be maintained against a foreign corporation for it to arise out of the activities of the corporation in the particular state.
 
 
 29
 Since we believe that the lower court erred in finding that Elliott's cause of action did not arise out of or was not connected with Nuodex' activities within New Hampshire, we need not decide whether the New Hampshire Supreme Court has made a 'requirement' of this International Shoe 'standard.' However, be it noted that the New Hampshire cases do not leave this question free from doubt.
 
 
 30
 It is fitting for us now to set forth the reasons that compel us to disagree with the learned district judge concerning the aforementioned finding.
 
 
 31
 Elliott claims that Super Ad-It, manufactured by Nuodex and sold by Litter to King and embodied by King in a paint sold by it to Elliott and thereafter used by Elliott, caused substantial damage to the latter's greenhouses in New Hampshire. Though the district court properly found that activities carried on in New Hampshire by Litter on behalf of Nuodex were continuous and systematic, it seems to have taken the view that, unless a direct solicitation or advertisement by Nuodex in New Hampshire either caused King to purchase Super Ad-It or caused Elliott to purchase King paint, the injury complained of here did not arise out of and was not connected with the activities of Nuodex in New Hampshire.
 
 
 32
 Contrary to the district court, we believe that such connection is demonstrated by Nuodex' industrial and retail registration of Super Ad-It under the New Hampshire Economic Poisons Law, set forth above, in 1953 and 1954. It seems that without such registration Super Ad-It could not be sold legally in New Hampshire even in a 'mixture of substances,' such as King's paint. See N.H.Rev.Stat.Ann. c. 438, § 1 (1955). Therefore, the damage occasioned by its shipment into New Hampshire by King was connected with and arose from activity by Nuodex in New Hampshire in the sense that if Nuodex had not registered the product, and in the absence of other registration, the product could not have legally entered New Hampshire and the suit would not have arisen. Thus the damage complained of here 'is accounted for only by the defendant's activities in New Hampshire.' Taylor v. Klenzade Products, supra, 97 N.H. at page 521 and 92 A.2d at page 913.
 
 
 33
 Moreover, it is vitally significant that Nuodex did much more than merely register its product in New Hampshire, as detailed in the lower court's opinion. The district court found that there was a continuous and systematic course of business activity in the state by Nuodex through Litter. This activity included efforts to increase the sales of Super Ad-It in New Hampshire. Although the sale that resulted in the damage complained of here was made by Litter to King in Massachusetts, the record in addition reveals that retail packages in Super Ad-It were getting into the state either by direct sales or other distribution routes. All these various methods of distributing the substance in question were part and parcel of Nuodex' over-all sales program.
 
 
 34
 In conclusion, as the district court suggested in its opinion, under New Hampshire law Nuodex can be held subject to service on account of the activity of its sales representative, Litter, notwithstanding that Litter was an independent corporation representing other companies besides Nuodex in the state. See LaBonte v. American Mercury Magazine, Inc., supra. Neither does the fact that the activities of Litter largely constituted mere solicitation preclude service in this case. Taylor v. Klenzade Products, supra. Nor do we believe that due process would be violated by holding Nuodex, a foreign corporation, subject to process where, as here, through sales managers it supervised the activities of Litter, its representative, and on at least one occasion joined with Litter to service an account in New Hampshire. The conclusion that Litter was to a certain extent under the direction of Nuodex in conducting the latter's sales program cannot be avoided on the facts of this case as detailed above and in the lower court's opinion.
 
 
 35
 For all the above reasons we conclude that Nuodex was subject to service in New Hampshire and that the district court had jurisdiction to entertain the action brought by Elliott, as plaintiff, and King, as cross-claimant.
 
 
 36
 A judgment will be entered vacating the orders of the district court and remanding the cases to that court for further consistent proceedings.
 
 
 37
 MAGRUDER, Chief Judge (concurring).
 
 
 38
 I agree with Judge Hartigan's opinion to the effect that Nuodex cannot be held to have waived its objection to the jurisdiction. I also concur in Judge Hartigan's conclusion on the merits of the jurisdictional issue, though I am not sure that I would have put the matter just as he has done.
 
 
 39
 The basis of a state's personal jurisdiction over a foreign corporation has given rise to much dubious theorizing. On the foundation of 'doing business' within a state, the earlier explanations of 'implied consent' to the service of process, or of corporate 'presence,' have come to be recognized as fictitious forms of statement. Now it is fashionable to say that we must consider the extent of the corporate activities manifested within the state to answer the query whether the exercise of personal jurisdiction over the foreign corporation would offend traditional notions of fair play and substantial justice-- if it would, then the exercise of such personal jurisdiction is forbidden by the due process clause of the Fourteenth Amendment. See the discussion in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.
 
 
 40
 Of course it is true that a state is free to impose additional 'requirements' to the exercise of personal jurisdiction over foreign corporations, beyond the minimal requirements of the due process clause. However, I fail to find in the New Hampshire statute or in the New Hampshire court decisions any indication that New Hampshire has undertaken, as a matter of local law, to impose any such additional requirements. The important point is one of federal constitutional law, as the International Shoe case pointed out. That is to say, the manifested activities within the state by a foreign corporation may amount to a 'doing business' of so continuous and systematic a nature as reasonably to permit the state to subject the foreign corporation to service of process with respect to any cause of action, wheresoever arising. On the other hand, a much lesser manifestation of activity within the state may, consistently with due process, justify a state to exercise personal jurisdiction over the foreign corporation, sued on a cause of action having some connection with or arising out of those activities within the state.
 
 
 41
 I doubt whether the underlying facts in the case at bar would warrant the ultimate conclusion that Nuodex was 'doing business' within the State of New Hampshire of so continuous and systematic a character as to subject itself to the exercise of personal jurisdiction by the state on account of any and all causes of action, wheresoever arising. But as Judge Hartigan's opinion points out, Nuodex did make some efforts through a New Hampshire representative to promote the sales of its products in New Hampshire. The particular 'Super Ad-It' which was alleged to have caused the harm in the present case was not sold by Nuodex in New Hampshire, but Nuodex in New Jersey put out in commerce a poisonous chemical, some of which it no doubt hoped and expected would eventually find its way into New Hampshire as an ingredient of paint products sold by others. That is what happened here; a salesman of codefendant King sold to the plaintiff in New Hampshire some paint containing Nuodex Super Ad-It as an ingredient. This sale was rendered lawful under the New Hampshire law only because Nuodex had registered its poisonous chemical under the New Hampshire Economic Poisons Act. The subsequent use by the plaintiff of such paint product is alleged to have resulted in the tangible harm, inflicted in New Hampshire, upon the property of the plaintiff, a citizen of New Hampshire; and it is this tangible harm which is the subject of the cause of action now sued on. I have no doubt that under the Fourteenth Amendment the State of New Hampshire has power to subject the foreign corporation to a reasonable mode of personal service (as was the service here) in order to compel Nuodex to answer in the New Hampshire courts to the aforementioned local complaint. Cf. Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. If this complaint had been brought in a New Hampshire state court, service of process could have been made upon the Secretary of State, who would have had the duty, under the local statute, to give notice of the pendency of the cause of action to the foreign corporation. That being so, equivalent service of process is good under Rules 4(d)(3) and 7 of the Federal Rules of Civil Procedure.
 
 
 42
 WOODBURY, Circuit Judge (concurring).
 
 
 43
 I think it helpful to distinguish sharply between the two questions of law involved in cases like this: 1) the preliminary question to be decided by application of state law and, 2) the further question, if presented, to be decided by application of federal constitutional law. Judge Goodrich of the Court of Appeals for the Third Circuit sitting on this Court by assignment did this clearly and concisely in Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193, 194, wherein he said:
 
 
 44
 'There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution. Const. art. 1, § 8, cl. 3; Amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation.'
 
 
 45
 In the Pulson case we took the view that the applicable Massachusetts statute as interpreted by the Supreme Judicial Court of that Commonwealth was not broad enough, in view of the limited local activities of the foreign corporation there involved, to subject it to suit in Massachusetts. Thus in that case we did not reach the federal question of the limitation on state power imposed by the due process clause of the Fourteenth Amendment. I think the situation in New Hampshire is different. In my opinion the New Hampshire statute, unlike that of Massachusetts, has not been limited by judicial decision to restrict the scope of state power short of federal constitutional bounds.
 
 
 46
 Campbell v. United States Radiator Corp., 1933, 86 N.H. 310 167 A. 558, and Grace v. Procter & Gamble Co., 1948, 95 N.H. 74, 57 A.2d 619, certainly indicate unmistakably that in New Hampshire foreign corporations are subject to local jurisdiction up to the limits imposed upon state action by the due process clause of the Fourteenth Amendment. Perhaps some rather ambiguous language used in deciding the later cases of Taylor v. Klenzade Products, Inc., 1952, 97 N.H. 517, 92 A.2d 910, and LaBonte v. American Mercury Magazine, Inc., 1953, 98 N.H. 163, 96 A.2d 200, 38 A.L.R.2d 742, can be interpreted as casting some doubt upon the holding of the earlier Campbell and Grace cases. But in the later Taylor and LaBonte cases the court did not purport to overrule, indeed it did not even, except possibly by innuendo, cast doubt upon the holding of the earlier cases cited above. As I read the four cases together, I think it reasonably clear that New Hampshire has not departed from its original interpretation of the local statute as exerting jurisdiction over foreign corporations up to the constitutional limit. This, on my analysis, disposes of the question of state law and brings up the question of federal law, i.e. what limitation does the due process clause impose on the state in this regard?
 
 
 47
 The International Shoe case cited and discussed by my associates provides the answer to this question. In that case, as Chief Judge Magruder points out, the Court departed from the rationale of earlier cases and held that the test of due process in this context is whether the nature and extent of a foreign corporation's local activities are of sufficient extent to subject it to local jurisdiction without giving offense to 'traditional notions of fair play and substantial justice.' (326 U.S. 310, 66 S.Ct. 158)
 
 
 48
 I suggest that application of the test of 'fair play and substantial justice' calls for reference to the specific interests in conflict in each particular case. Thus in this case I think we should weigh on the one hand the legitimate interests of the state, 1) in providing local access to compensation for wrongs done to its citizens, and, 2) in regulating potentially harmful activity within the state, as against, on the other hand, the legitimate interests of the foreign corporation relative, 1) to its reasonable expectations as to the laws and liabilities to which it was subjecting itself, and, 2) to its opportunity to defend itself without undue expense and inconvenience.
 
 
 49
 In this case the foreign corporation was promoting by sales force and advertising the use of its commercial poisons in the state of New Hampshire. And it registered its product under the New Hampshire Economic Poisons Law. Clearly then it not only hoped but also anticipated that its product would be used in the state. Furthermore, it certainly must have realized that the poisonous nature of its product created an appreciable risk of injury to persons in the state, even though the amount used, its value and the number of local users was relatively small. Under these circumstances I cannot think it unfair or unjust to subject the defendant to local jurisdiction. Furthermore, the factors enumerated indicate that the state's interest in subjecting the defendant to local jurisdiction is substantial.
 
 
 50
 It is true that there is no clear showing that the plaintiff's use of Super Ad-It was the result of the defendant's promotional activity in the state. But it does not logically follow that the fairness of exercising local jurisdiction over the defendant should be determined by the fortuitous factor of the plaintiff's state of mind when he bought the product. This factor relates more logically to fairness to the plaintiff of denial of jurisdiction. Rather the fairness to the foreign corporation is more logically related to what it might reasonably have expected as a result of its local activities.
 
 
 51
 In this case the use of the defendant's product in New Hampshire was certainly expected by the defendant since it had actively promoted that use in the state. And it was hardly an unforeseeable consequence of that use that the defendant would incur local legal liabilities. These considerations, coupled with the District Court's finding that no undue inconvenience or expense would be cast upon the defendant in defending this action in New Hampshire, lead me to the conclusion that to subject it to local jurisdiction does no violence to 'traditional notions of fair play and substantial justice.'
 
 
 
 [1]
 In pertinent part this statute provides:
 'Service of process * * * on a foreign corporation, may be made * * *
 '(c) as otherwise provided by law. Whenever any foreign corporation authorized to transact, or transacting business in this state shall fail to appoint or maintain in this state a registered agent upon whom service of legal process or service of any such notice or demand may be had, or whenever service on any such registered agent cannot with reasonable diligence and promptness be made as above provided, or whenever the certificate of authority of any foreign corporation shall be forfeited, then and in every such case the secretary of state shall be and hereby is irrevocably authorized as the agent and representative of such foreign corporation to accept service of any process or service of any notice or demand required or permitted by law to be served upon such corporation.'
 
 
 [2]
 It is a matter of record that Nuodex registered Super Ad-It, the product complained of here, under this statute both for industrial and retail sale in each of the years 1953, 1954, 1955. The statute provides:
 '438:3 Registration. Every economic poison which is distributed, sold or offered for sale within this state or delivered for transportation or transported in intrastate commerce or between points within this state through any point outside this state shall be registered in the office of the commissioner, and such registration shall be renewed annually; * * *.'