Hillsborough,
No. 6119.

LENA ROY, ADMINISTRATRIX *v.* TRANSAIRCO, INC., *& a.*

May 31, 1972.

*Craig & Wenners* (*Mr. Vincent A. Wenners, Jr.,* orally) for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *Robert A. Backus* (*Mr. Backus* orally) for the defendant Transairco, Inc.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Arthur G. Greene* orally) for the defendant New England Telephone and Telegraph Company.

KENISON, C.J.    This is an action for wrongful death brought by Lena Roy, administratrix of the estate of Reginald Y. Roy, against three corporate defendants, Transairco, Inc., New England Telephone, and White Mountain Power Co. The decedent was a resident of New Hampshire and the injury resulting in his death occurred in this State. On March 29, 1969, the Trial Court (*Grant,* J.) granted the motion of defendant Transairco to dismiss as to it for lack of jurisdiction

and the plaintiff's exceptions thereto were reserved and transferred.

The proceedings against Transairco were instituted by substituted service on the secretary of state pursuant to RSA 300:11, 12. In pertinent part, RSA 300:11(c), enacted by Laws 1949, ch. 206, provides that the secretary of state is authorized to accept service of process on any foreign corporation "transacting business in this state." It has long been established that this statute has a "long arm and a long reach," and that its objective is to provide for the exercise of jurisdiction to the full extent of the constitutional limit. *Roy* v. *North American Newspaper Alliance,* 106 N.H. 92, 95, 205 A.2d 844, 846 (1964); *Sanders Associates, Inc.* v. *Galion Iron Works & Mfg. Co.,* 304 F.2d 915 (1st Cir. 1962); *W.H. Elliott & Sons Co.* v. *Nuodex Products Co.,* 243 F.2d 116 (1st Cir. 1957); *see Property Owners Ass'n* v. *Sholley,* 111 N.H. 363, 284 A.2d 915 (1971). Thus, the principal question for consideration is whether, consistent with the limitations of the due process clause of the fourteenth amendment, defendant Transairco, a Delaware corporation with its manufacturing plant in Ohio, can be put to the defense of this suit for the wrongful death of Reginald Y. Roy based upon its contacts with this State. *International Shoe Co.* v. *Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

Counsel for defendant urges that we reconsider the doctrine of the *Roy* case, *supra,* that the objective of RSA 300:11(c) was to exert jurisdiction over foreign corporations to the constitutional limit, in light of the enactment by Laws 1965, ch. 198, of RSA 300:14, the so-called "single-act" statute. It provided for constructive appointment of the secretary of state as agent for any foreign corporation that either "makes a contract with a resident of New Hampshire to be performed in whole or in part by either party in New Hampshire," or "commits a tort in whole or in part in New Hampshire against a resident." The 1971 amendments, not applicable here, have deleted the requirement that the contract be made with, or the tort committed against, a resident of New Hampshire. Laws 1971, ch. 13, eff. May 10, 1971; RSA 300:14 (supp.). Defendant's contention is that the statute was intended to expand the power to exercise jurisdiction over foreign corporations beyond that reposed in RSA 300:11,

and that in order to avoid casting upon the legislature the stigma that it has either passed a "meaningless act" or attempted to expand the power to assert jurisdiction "beyond constitutional limits," this court should adopt the "inescapable conclusion" that it overstated the intended breadth of RSA 300:11(c) in the *Roy* decision. By these contentions defendant hopes to establish, in accordance with a finding of the trial court that service was had under RSA 300:11(c), 12, that only the "longer" reach of RSA 300:14 would give the court jurisdiction to adjudicate under the facts of this case.

We view the passage of section 14 as a legislative affirmation of the principles established by *Roy, supra.* The language of amendments to a statute may be some evidence of legislative intent with respect to the original statute and may serve to make clear the original legislative intent. *Collins* v. *Derry,* 109 N.H. 470, 472, 256 A.2d 654, 655 (1969); 1 Sutherland, Statutory Construction *s.* 1930, at 416; *s.* 1931, at 418 (1943). That the sections might require different procedural steps be taken prior to resolution of any challenge to jurisdiction to adjudicate in a particular case is of no moment here. *See Gill* v. *Fairchild Hiller Corp.,* 312 F. Supp. 916 (D.N.H. 1970). Neither is the fact that minor technical differences existed in the manner and method of service of process pursuant to the sections at the time suit was instituted. That service under these sections was made uniform by Laws 1971, ch. 216, RSA 300:15 (supp.), suggests that the variations arose more by oversight than by design. N.H.S. Jour. May 18, 1971. And there is no basis here, we should add, to argue that notice to the defendant was inadequate. *See Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950).

The amendment of RSA 300:15 in accordance with the report of the Senate Judiciary Committee is evidence that the original intention of the legislature was that service of process as provided by RSA 300:12 be effective to invoke jurisdiction under RSA 300:14, and that RSA 300:12 and RSA 300:15 would be duplicate statutes. RSA 300:12 was enacted to provide a simple and convenient method of local plaintiffs to invoke jurisdictions over foreign corporations. *Shiatte* v. *Company,* 81 N.H. 294, 125 A. 429 (1924). An

interpretation that prior to the 1971 amendment RSA 300:12 was restricted only to cases where a plaintiff wished to invoke jurisdiction under sections other than RSA 300:14 would mean that the broad language of RSA 300:12 served only as a technical trap for the unwary. At least since the time of Chief Justice Doe this has not been a procedural interpretation which has been favored in this jurisdiction. *See e.g., Attorney General* v. *Taggart,* 66 N.H. 362, 29 A. 1027 (1890). Such a technical construction of the statutes would mean that a plaintiff would have to invoke double service of process, serving no useful function. It would only have resulted in a foreign corporation receiving identical notice twice that an action was being brought against it. This is an interpretation we cannot accept as reasonable or a reflection of legislative intent.

This brings us to the broader jurisdictional problem previously stated. The record shows that on July 29, 1966, in Holderness, New Hampshire, decedent died as a result of electrocution while working "in the vicinity of" a unit manufactured by Transairco, Inc., and power lines owned or controlled by the other defendants. Decedent's administratrix sued Transairco alleging, *inter alia,* negligent design and manufacture and breach of warranty.

Transairco is a foreign corporation organized under the laws of the State of Delaware with its manufacturing plant located in Ohio. It manufactures air-conditioning units under a part of the business referred to as USAIRCO Division and "Skyworkers" and "Roustabout" cranes under a part known as the Hughes-Keenan Division. Defendant advertises its products in standard trade journals and periodicals of general circulation. There is no evidence before this court of the general extent of its interstate business.

Prior to the death of decedent, Transairco had no agents, servants, employees, office, warehouse or stock of merchandise in New Hampshire. Neither has it made any repairs here on any of its products. There have been no direct sales of either its Skyworker or Roustabout crane units in this State, although there have been direct mail solicitations to eighty-one (81) addressees in this State. Over the period of July 1, 1964, to July 28, 1968, these addressees have each

received seven pieces of mail, or five hundred and sixty-seven (567) total pieces. No business was obtained as a result of this solicitation. Although it is not disputed that the Skyworker unit alleged to have been negligently designed and to have been instrumental in decedent's death is of Trans-airco's manufacture, there is no evidence indicating how it came to be in New Hampshire. There has been no mail solicitation for sale of defendant's air-conditioning units during the period in question, nor has there been a manufacturer's representative assigned here. Sales of air-conditioning units were made in this State to independent dealers. These sales totalled $72.00 in 1964, $5,877.46 in 1966, $446.66 in 1967, and $450.00 for the first seven months of 1968.

This court has for some time been committed to the realistic treatment of the problem of jurisdiction over foreign corporations. *Grace* v. *Company*, 95 N.H. 74, 57 A.2d 619 (1948); *Taylor* v. *Company*, 97 N.H. 517, 92 A.2d 910 (1952). We have adopted and applied the rationale of *International Shoe* and its progeny without limitation. *Grace* v. *Company supra;* *Roy* v. *North American Newspaper Alliance supra. See also Benson* v. *Brattleboro Retreat*, 103 N.H. 28, 164 A.2d 560 (1960), 84 A.L.R.2d 409 (1962). It therefore seems unnecessary to reiterate the well-known and widely recognized principles established by this line of cases. *See* Comment, Long-Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness, 69 Mich. L. Rev. 300 (1970).

This case calls for an application of these principles to the field of products liability. *See* Annot., 19 A.L.R.3d 13 (1968); Comment, In Personam Jurisdiction Over Nonresident Manufacturers in Products Liability Actions, 63 Mich. L. Rev. 1028 (1965); Comment, The Pennsylvania Long-Arm: An Analytical Justification, 17 Vill. L. Rev. 73, 75-82 (1971). The United States Supreme Court has not yet provided guidance in this specific area, and at least one noted commentator doubts it will in the foreseeable future, if ever. Ehrenzweig, From State Juridiction to Interstate Venue, 50 Ore. L. Rev. 103, 104-05 (1971). A number of State courts have considered the unique problems connected with such an adjudication.

The essential nature of the controversy revolves around the requirement of the Court in *Hanson* v. *Denckla*, 357 U.S.

235, 2 L. Ed. 2d 1283, 78 Sup. Ct. 1228 (1958), "that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State . . . ." (Emphasis added). It has been suggested that there are two plausible interpretations of this language. *See* Note, Long Arm Jurisdiction When the Tortious Act Occurs in One State, the Injurious Consequences in Another, 30 Ohio St. L.J. 410 (1969). One would require, by a literal reading of *Hanson,* that in order for the court to obtain jurisdiction over the defendant, it find some act by which the defendant "*purposefully availed*" itself of the privilege of conducting activities in the forum. (Emphasis added). *See* Leflar, Conflict Of Laws, 34 N.Y.U.L. Rev. 20, 33 (1959); *Buckeye Boiler Co.* v. *Superior Court,* 71 Cal. 2d 893, 458 P.2d 57, 80 Cal. Rptr. 113 (1969). *See also Gray* v. *American Radiator & Standard Sanitary Corp.,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961) (where the "purposefully avails" test became one of "foreseeability" for purposes of a products liability action). Alternatively, *Hanson* would be confined to its facts and the applicable test would be satisfied when defendant's only contact with the State was that his product caused the plaintiff's injury there. Comment, Tortious Act as a Basis for Jurisdiction in Products Liability Cases, 33 Fordham L. Rev. 671, 685-86 (1965); *Phillips* v. *Anchor Hocking Glass Corp.,* 100 Ariz. 251, 413 P.2d 732 (1966), 19 A.L.R.3d 1 (1968); *see Andersen* v. *National Presto Industries, Inc.,* 257 Ia. 911, 135 N.W.2d 639 (1965); *Ehlers* v. *U.S. Heating & Cooling Mfg. Corp.,* 267 Minn. 56, 124 N.W.2d 824 (1963).

Under the facts of this case, we do not feel constrained to rely on either approach. Defendant here was not only engaged in a consistent course of solicitation of sales of its products in this State over a four-year period prior to the death of decedent, but has also derived a not insignificant amount of income from the sale of its products to independent dealers in this State. *See Singer* v. *Walker,* 15 N.Y.2d 443, 464 *et seq.,* 209 N.E.2d 68, 80 *et seq.* (1965). It seems reasonable to assume that it sought and found a market for its products here, and that the defense of an action in this State is not so unfair as to amount to a denial of due process. *See* Currie, The Growth Of The Long Arm, 1963 U. Ill. L.F. 533, 544-60.

But these reasons do not stand alone in support of our conclusion. Our "long arm" statutes are witness to a legislative policy that this State protect its residents in their dealings with nonresidents by insuring to them a local forum to seek redress for their injuries. Under the doctrine of *International Shoe,* as modified by *Hanson* v. *Denckla, supra,* we must also be concerned with fairness to the parties and a proper allocation of the judicial function among the States. *See* Kurland, The Supreme Court, The Due Process Clause And The In Personam Jurisdiction Of State Courts, 25 U. Chi. L. Rev. 569 (1958). In this case, very strong considerations relating not only to the plaintiff, but also to the taking of evidence, the location of witnesses, the site of the accident, and the uncontested presence here for purposes of jurisdiction of the other defendants, point to this State as the proper one for trial. *See* Developments in the Law — State-Court Jurisdiction, 73 Harv. L. Rev. 909, 919-35 (1960). The economy and efficiency of suit here cannot be disregarded. More than a century and a quarter ago this court pointed out that we should "not send our citizens to a foreign jurisdiction in quest of redress for injuries committed here." *Libbey* v. *Hodgdon,* 9 N.H. 394, 396 (1838); *see Property Owners Ass'n* v. *Sholley supra.* These factors serve to minimize any inconvenience or unfairness to Transairco and strengthen plaintiff's interest in maintaining this action in New Hampshire. Not to be overlooked is that the answers to interrogatories submitted by plaintiff indicate that Transairco's activities are essentially multistate while plaintiff's intestate, a laborer, carried on only ordinary, highly localized activities. *See* Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121 (1966). Additionally, New Hampshire law will govern this action. *Clark* v. *Clark,* 107 N.H. 351, 222 A.2d 205 (1966).

For all the reasons and considerations mentioned above, we conclude that it is reasonable and consistent with due process of law to hold the defendant subject to the adjudicative jurisdiction of New Hampshire. *Cf.* Twerski, The Jurisdictional Defense, 13 For The Defense 17 (February 1972); Twerski, A Return to Jurisdictional Due Process — the

Case for the Vanishing Defendant, 37 Ins. Counsel J. 265 (1970).

*Plaintiff's exception sustained; remanded.*

GRIFFITH, J., did not sit; the others concurred.