Pauline **MULHERN** and Thomas P. Mulhern

. v.

**HOLLAND AMERICA CRUISES.**

Civ. A. No. 74–325.

United States District Court,
D. New Hampshire.
April 30, 1975.
As Amended May 2, 1975.

John V. Dwyer, Jr., Hamblett, Kerrigan, LaTourette & Lopez, Nashua, N. H., for plaintiffs.

Claudia C. Damon, Sheehan, Phinney, Bass & Green, Manchester, N. H., for defendant.

## MEMORANDUM OPINION ON MOTION TO DISMISS

BOWNES, District Judge.

Plaintiff is a New Hampshire resident. She brings suit against Holland America alleging that, while a passenger on board the S.S. Rotterdam, she received personal injuries when, as a consequence of defendant's negligence, she fell down a common stairway. In addition, plaintiff alleges that her injuries were compounded as a result of defendant's failure to provide her with proper medical treatment. Defendant, Holland America, is incorporated in the Netherland Antilles and has its principal place of business in New York. Diversity exists between the parties and the amount in controversy exceeds $10,000. 28 U.S. C. § 1332.

Defendant moves to dismiss the action on the ground that this court cannot, within the parameters of the due process clause of the Fourteenth Amendment, exercise *in personam* jurisdiction over it. Service was made upon the defendant pursuant to the provisions of the New Hampshire "long-arm" statute. The New Hampshire "long-arm" statute provides in pertinent part:

> . . . Whenever any foreign corporation authorized to transact, or transacting business in this state shall fail to appoint or maintain in this state a registered agent upon whom service of legal process or service of any such notice or demand may be had, . . . the secretary of state shall be and hereby is irrevocably authorized as the agent and representative of such foreign corporation to accept service of any process or service of any notice or demand required or permitted by law to be served upon such corporation. NH RSA 300:11(c).

## FACTS

Defendant is engaged in the organization and selling of vacation cruises. As part of its business, defendant sells cruises on the S.S. Rotterdam. In order to promote the Rotterdam Cruise, defendant distributed promotional brochures to thirty-four New Hampshire travel agencies. In addition, defendant provided five local travel agencies with blank copies of its cruise passage contract.

The facts, although scanty, indicate that plaintiff, desiring to go on a vacation, visited a travel agency in Milford, New Hampshire. As a result of this contact, she booked passage for a cruise on board the S.S. Rotterdam. In order to arrange her passage, the travel agent called the defendant in New York. The defendant then forwarded to the travel agency a copy of its cruise pas-

sage contract; plaintiff paid the travel agent and received her ticket.

With ticket in hand, plaintiff traveled to New York where she embarked on her cruise. While on board ship, in Hamilton Harbor, Bermuda, plaintiff fell down a stairway breaking her ankle. She alleges that defendant was negligent in its failure to provide a safe passageway, or, in the alternative, a failure to warn her of the stairway's hazardous condition. Plaintiff further alleges that her injuries were compounded as a result of defendant's negligent medical treatment.

At the hearing counsel for the defendant represented to the court that, on the cruise in question, defendant's sole function was to supply the Rotterdam with passengers and that it had no control over the ship's maintenance, crew, or the services provided. Defendant stated that the responsibility for the ship's maintenance and the crew's performance was borne by the N.V. Mailschip Antilles. If this proves to be true, then Mailschip is an indispensable party to this action. Mailschip has had no contacts with New Hampshire and is, therefore, not subject to its "long-arm" jurisdiction.

## RULING AND ANALYSIS

■ The touchstone in any jurisdictional dispute is the standards enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957). These cases establish the principle that, in order to subject a foreign corporation which is not incorporated in the forum state to *in personam* jurisdiction, due process requires that the defendant have some "minimum contacts" with the forum state so that the institution of suit does not offend "traditional notions of fair play and substantial justice."

> [I]t is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed. 2d 1283 (1958).

■ The amenability of a foreign corporation to local process in a diversity suit "is determined in accordance with the law of the forum state.". Seymour v. Parke, Davis & Company, 294 F.Supp. 1257, 1259 (D.N.H.1969), aff'd, 423 F.2d 584 (1st Cir. 1970).

In Roy v. North American Newspaper Alliance, 106 N.H. 92, 205 A.2d 844 (1964), the New Hampshire Supreme Court held that the purpose of the New Hampshire "long-arm" statute was to extend jurisdiction over a nonresident to the fullest extent permitted under the due process clause of the Fourteenth Amendment. This court has recognized this intent and has applied the "long-arm" statute accordingly. Look v. Hughes Tool Co., 367 F.Supp. 1003 (D. N.H.1973); In Re Tech Consolidated, Inc., 329 F.Supp. 27 (D.N.H.1971); Gill v. Fairchild Hiller Corp., 312 F.Supp. 916 (D.N.H.1970).

■ Roy v. North American Alliance, *supra,* holds that there are no mechanical or quantitative rules by which contacts are assessed and jurisdiction determined. Note, Nonresident Jurisdiction and The New England Experience, 48 B.U.Law Rev. 372, 395–402 (1968). The court must judge each case on its own particular facts guided by two important considerations:

> First, the exercise of jurisdiction has to be reasonable from the standpoint of New Hampshire's interest in the litigation. Second, it has to be consistent with principles of fair play and substantial justice. Leeper v. Leeper, 114 N.H. 294, 296, 319 A.2d 626, 628 (1974).

Defendant's contacts with New Hampshire are sparse. It has provided thirty-four local travel agencies with promotional brochures and has distributed

blank cruise passage contracts to five travel agencies. In addition, defendant has advertised in the Manchester Union Leader, New Hampshire's only statewide newspaper. The amount of revenue which defendant has derived from soliciting in New Hampshire is unascertainable.

Defendant does not have a bank account, telephone number or listing, office, place of business, or any real, tangible, or intangible property located in New Hampshire. Its sole contact with this State arises from its relationship with various local travel agencies.

■ The first question is whether a travel agency, in obtaining a cruise passage contract for the plaintiff, becomes the agent of the one selling the cruise. If Milford Travel Agency was defendant's agent, then it is constitutionally proper to subject defendant to New Hampshire process. The general rule is that

> the sending of agents into the state on a regular basis to solicit business also constitutes doing business (thereby casting doubt on the old rule that mere solicitation was not enough), but if the corporation's business in the state is conducted by independent contractors with only limited power to act on behalf of the corporation, then the corporation probably will not be held to be doing business in the state. Wright and Miller, Federal Practice and Procedure: Civil § 1069 at 252 (1969).

In Stanga v. McCormick Shipping Corporation, 268 F.2d 544 (5th Cir. 1959), the Court held that a nonresident steamship company was not transacting business in Louisiana as a result of a local travel agency booking passenger space and issuing a ticket for the voyage. *See also* Holt v. Klosters Rederi A/S, 355 F.Supp. 354, n. 5 (W.D.Mich.

1973); Anderson v. Matson Navigation Co., 336 F.Supp. 1388 (D.Minn.1971). The *Stanga* Court recognized that the travel agency's function was a limited one. "It was more like a broker soliciting patronage from all prospective travelers going anywhere on the globe using transportation facilities of all kinds and of all ownerships." *Id.* at 551.[1]

■ The record does not disclose, nor could counsel inform the court at the hearing, whether the Rotterdam Cruise was promoted by the travel agency, or whether plaintiff informed the agency that she desired to sail on the S.S. Rotterdam and they were to purchase for her a ticket. In the absence of any evidence that the Milford Travel Agency solicited the plaintiff for the defendant or that it had legal power to bind the defendant, it cannot be found that an agency relationship existed between the defendant and the travel agency.

■ I must note, however, that with the liberalization of due process criteria, the jurisdictional distinction between agents and independent contractors has begun to fade. Courts treat persons who derive commission revenue, not in terms of agents or independent contractors, but they view their activities and status in a realistic commercial light. *See,* Scott Paper Co. v. Scott's Liquid Gold, Inc., 374 F.Supp. 184, 188 (D.Del.1974), and the cases cited therein. There is no doubt that travel agencies derive commissions from the sale of cruise tickets. But the act of solicitation in the forum state does not, *ipso facto,* subject defendant to "long-arm" jurisdiction. In *Seymour, supra,* 423 F. 2d at 584, the First Circuit held it would be constitutionally impermissible to extend jurisdiction over the defendant even though the defendant

> has some half dozen New Hampshire salesmen, most of whom are New

1. The Louisiana "long-arm" statute was subsequently amended. Time, Inc. v. Manning, 366 F.2d 690, 694 (5th Cir. 1966). Although the amendment was intended to "broaden the state's 'long-arm' jurisdiction," the principle for which I have cited the *Stagna* case remains valid; that is, travel agencies are more akin to independent contractors.

Hampshire residents. These visit New Hampshire physicians, hospitals and retail pharmacies to disseminate product information and to take orders. They have no authority to enter into contracts, and deliver nothing, except samples to physicians. Orders are forwarded to the Massachusetts office and upon acceptance are filled by parcel post or common carrier from a Massachusetts warehouse. The defendant advertises in the state by mail and otherwise. *Id.* at 585.

*See generally*, Wright and Miller, *supra*, § 1609 at 253.

 In deciding whether the extension of jurisdiction would violate "judicial notions of fair play and substantial justice," New Hampshire inquires as to whether defendant could have reasonably anticipated that its activities would have an effect in this State. Roy v. North American Alliance, *supra*. I find that it would be unrealistic to expect defendant to have anticipated that, as a consequence of providing New Hampshire travel agencies with promotional brochures, it would be subject to New Hampshire process for a tort that occurred in the waters of Bermuda and on the high seas. It would be stretching the imagination to contend that this action was reasonably foreseeable. New Hampshire courts are "committed to the realistic treatment of the problem of jurisdiction over foreign corporations." Roy v. Transairco, Inc., 112 N.H. 171, 176, 291 A.2d 605, 608 (1972).

 In assessing jurisdictional contacts, New Hampshire places heavy weight upon the right of its citizens to institute local suit "in quest of redress for injuries committed here." Property Owners Association v. Sholley, 111 N.H. 363, 365, 284 A.2d 915, 917 (1971), quoting, Libbey v. Hodgdon, 9 N.H. 394, 396 (1838). In the instant case, plaintiff traveled from New Hampshire to New York and there embarked on a cruise; it was during her cruise that the cause of action arose. This situation is quite different from the one where plaintiff is injured in New Hampshire as a result of a defective product that was produced out-of-state. Roy v. Transairco, Inc., *supra*. There is little doubt that the forum's interest diminishes when the tort occurs outside the state even though the injured plaintiff returns home. Anderson v. Matson Navigation Co., *supra*.

In Roy v. Transairco, *supra*, the New Hampshire Supreme Court stated:

Under the doctrine of *International Shoe* as modified by Hanson v. Denckla, *supra*, we must also be concerned with fairness to the parties and a proper allocation of the judicial function among the States. * * * In this case, very strong considerations relating not only to the plaintiff, but also to the taking of evidence, the location of witnesses, the site of the accident, and the uncontested presence here for purposes of jurisdiction of the other defendants, point to this State as the proper one for trial. * * * The economy and efficiency of suit here cannot be disregarded. *Id.* 112 N.H. at 178, 291 A.2d at 609.

Taking into account these considerations, I note that most of the witnesses are located in New York; the accident occurred out-of-state; and a possible indispensable party is not subject to New Hampshire process.

 The facts of this case place us on the cutting edge of the due process clause. I recognize that the State has the power to subject a defendant to suit for a cause of action which did not arise from its forum business activities. *Seymour, supra,* 423 F.2d at 587. Nevertheless, I find, after a qualitative analysis of defendant's contacts with New Hampshire, that to apply the "long-arm" statute to defendant would be a venture beyond the outer periphery of the due process clause. My reasons are as follows:

1. The cause of action arose outside of the forum state;

2. All witnesses, except the plaintiff, her husband, and her treating doctor, are located in the New York area;

3. The cause of action did not arise out of defendant's New Hampshire business activities;

4. The travel agency was not the defendant's agent;

5. Defendant's sole contact with this State was its relationship with travel agencies whereby it distributed to them promotional brochures and, to a select few, blank contracts; and

6. A probable indispensible party, N.V. Mailschip Antilles, is not subject to New Hampshire judicial process.

While contemporary due process criteria, as to jurisdictional requirements, are quite flexible, I find that it would be a violation of the due process clause to extend personal jurisdiction over the defendant.

Defendant's motion is granted.

So ordered.