## CENTRONICS DATA COMPUTER CORPORATION

v.

**MANNESMANN, A. G., Mannesmann Prazisions Technik, GmbH, Demag-Meer, A. G., Mannex (London), Ltd., Mannesmann Export, A. G., and Lohmann & Stolterfoht, A. G.**

### Civ. A. No. 76-333.

United States District Court,
D. New Hampshire.

June 10, 1977.

Richard F. Horowitz, Weiss, Rosenthal, Heller, Schwartzman & Lazar, New York City, Joseph A. Millimet and Andrew D. Dunn, Devine, Millimet, Stahl & Branch, Manchester, N. H., for plaintiff.

James E. Higgins, Sheehan, Phinney, Bass & Green, Manchester, N. H., for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS

BOWNES, District Judge.

This action is brought by Centronics Data Computer Corporation (Centronics), a Delaware corporation with a principal place of business in Hudson, New Hampshire, against Mannesmann, A.G.; Mannesmann Prazisions Technik, GmbH; Demag-Meer, A.G.; Mannex (London), Ltd.; Mannesmann Export, A.G.; and Lohmann & Stolterfoht, A.G. (henceforth referred to as "Mannesmann" and treated collectively) which, together, it is alleged, comprise a multinational conglomerate with principal headquarters in Germany.

The complaint alleges that the defendants violated antitrust laws, interfered with advantageous contractual relations, misappropriated trade secrets, and defamed the plaintiff. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1332(a) and 1337 and 15 U.S.C. §§ 15 and 26. The complaint does not state on what New Hampshire statute jurisdiction is based, but, giving it a broad, liberal reading, I conclude that the complaint implies use of New Hampshire's "long arm" statutes, NH RSA 300:11(c) and 300:14.

The defendants have moved to dismiss the complaint on the following grounds: that they did not have sufficient contacts with the District of New Hampshire to be subject to *in personam* jurisdiction; that the venue requirements of 15 U.S.C. § 22 have not been met; and that there is no *in personam* jurisdiction because service of process under NH RSA 300:11 was not authorized. The defendants also claim that venue is improper because New Hampshire is an inconvenient forum.

I have previously considered jurisdictional and venue questions very close to those involved here in *Grappone, Inc. v. Subaru of America, Inc.,* 403 F.Supp. 123 (D.N.H. 1975). In that case, an automobile dealer sued an importer and distributor under the Federal antitrust statutes and under the so-called Dealers Day in Court Act, 15 U.S.C. §§ 1221 *et seq.* I held that the importer transacted business in New Hampshire within the meaning of the antitrust venue statute, 15 U.S.C. § 22, and the New Hampshire long arm statute, NH RSA 300:11(c). There was no reason to consider the applicability of NH RSA 300:14.

## VENUE

■ In *Grappone,* the defendant was a Pennsylvania corporation with a principal place of business in New Jersey. The controlling venue statute was the special antitrust venue statute, 15 U.S.C. § 22. I also found venue under 28 U.S.C. § 1391(b) which allows a federal claim to be brought in the judicial district "in which the claim arose." *Grappone, Inc. v. Subaru of America, Inc., supra,* 403 F.Supp. at 133. In so finding, I held that "[t]he special antitrust venue statute is supplemented by the general venue statute." *Op. cit. See also Call Carl, Inc. v. BP Oil Corp.,* 391 F.Supp. 367 (D.C.Md.1975); *Professional Adjusting System of America, Inc. v. General Adjustment Bureau, Inc.,* 352 F.Supp. 648 (E.D.Pa.1972); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 257 (E.D.Pa.1968); *Hoffman Motors Corp. v. Alfa Romeo S.P.A.,* 244 F.Supp. 70 (S.D.N.Y.1965).

Here, the analysis that I went through in *Grappone* is unnecessary. The defendants in this action are all aliens, and venue is properly in this court by virtue of 28 U.S.C. § 1391(d) which provides: "An alien may be sued in any district." Venue is also here pursuant to 28 U.S.C. § 1391(b) as the district "in which the claim arose," since it is alleged that the defendants' actions injured the plaintiff in New Hampshire.

## JURISDICTION

The Federal Rules provide that service of a complaint may be made upon a foreign corporation by following the manner prescribed by the law of the state in which the District Court is held. F.R.Civ.P. 4(d)(3) and (7). *Grappone, Inc. v. Subaru of America, Inc., supra,* 403 F.Supp. at 133; *Seymour v. Parke, Davis & Co.,* 294 F.Supp. 1257, 1259 (D.N.H.1969), aff'd, 423 F.2d 584 (1st Cir. 1970). The plaintiffs have availed themselves of Rule 4(d)(3) and (7) by using the service provisions of New Hampshire's long arm statutes.

In *Grappone, Inc. v. Subaru of America, Inc., supra,* 403 F.Supp. at 133–134, I outlined the criteria necessary for *in personam* jurisdiction and for personal service under the foreign corporation long arm statute, NH RSA 300:11(c), which provides:

> Whenever any foreign corporation authorized to transact, or transacting business in this state shall fail to appoint or maintain in this state a registered agent upon whom service of legal process or service of any such notice or demand may be had, or whenever service on any such registered agent cannot with reasonable diligence and promptness be made as above provided, or whenever the certificate of authority of any foreign corporation shall be forfeited, then and in every such case the secretary of state shall be and hereby is irrevocably authorized as the agent and representative of such foreign corporation to accept service of any process or service of any notice or demand required or permitted by law to be served upon such corporation.

This statute is meant to extend jurisdiction over foreign corporations to the full constitutional limit. *Roy v. North American Newspaper Alliance,* 106 N.H. 92, 95, 205 A.2d 844 (1964).

In my analysis of jurisdictional facts as they relate to the New Hampshire statute, I am guided by two principles.

> First, the exercise of jurisdiction has to be reasonable from the standpoint of New Hampshire's interest in the litigation. Second, it has to be consistent with principles of fair play and substantial jus-

tice. *Leeper v. Leeper,* 114 N.H. 294, 296, 319 A.2d 626, 628 (1974) as quoted in *Grappone, Inc. v. Subaru of America, Inc., supra,* 403 F.Supp. at 134.

In addition, the reach of the long arm statute may not be extended beyond what is permitted by the Constitution of the United States.

The factors to be weighed in determining whether the contacts in a given case are sufficient to meet the requirements of fair play called for by the Due Process Clauses of the Fifth and Fourteenth Amendments include the quantity of contacts, the nature of the contacts, and the connection of the cause of action with those contacts. *Mulhern v. Holland America Cruises,* 393 F.Supp. 1298 (D.N.H.1975). In addition, I must consider New Hampshire's interest in protecting its citizens and whether that interest has been invoked here. *Look v. Hughes Tool Co.,* 367 F.Supp. 1003 (D.N.H. 1973); *Seymour v. Parke, Davis & Co., supra,* 294 F.Supp. 1257.

This court has considered the due process requirements of the Fourteenth and Fifth Amendments as set out in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny on numerous occasions. *Cf. Grappone, Inc. v. Subaru of North America, Inc., supra,* 403 F.Supp. 123; *Acme Engineering, Inc. v. Ceramic Coating Co.,* 397 F.Supp. 875 (D.N.H. 1975); *Mulhern v. Holland America Cruises, supra,* 393 F.Supp. 1298; *Look v. Hughes Tool Co., supra,* 367 F.Supp. 1003; *Gill v. Fairchild Hiller Corp.,* 312 F.Supp. 916 (D.N.H.1970); *Seymour v. Parke, Davis & Co., supra,* 294 F.Supp. 1257. Under the usual test, the state must have "sufficient contacts" so that the maintenance of a suit locally would not offend the "traditional conception of fair play and substantial justice." *International Shoe v. Washington, supra,* 326 U.S. at 320, 66 S.Ct. at 160. "When deciding whether the extension of jurisdiction would violate 'judicial notions of fair play and substantial justice,' courts should inquire 'whether defendant could have reasonably anticipated that its activities would have an effect' in this jurisdic-

tion. *Mulhern v. Holland America Cruises,* 393 F.Supp. 1298, 1303 (D.N.H.1975)." *Grappone, Inc., supra,* 403 F.Supp. at 134.

Since there is no question of subject matter jurisdiction, I turn to the sufficiency of the defendants' contacts with the State. The alleged contacts are as follows. First, representatives of Mannesmann visited New Hampshire at plaintiff's place of business on three occasions in 1973, 1974, and 1975. Each of these contacts, it is alleged, were in furtherance of the defendants' interest in marketing their computer printers. Pl's. Memorandum, pp. 8–9. Secondly, it is alleged that an American distributor, one Frank Schaller, visited New Hampshire repeatedly. Pl's. Memorandum, pp. 10–27. The plaintiff also alleges that Mannesmann agents visited other New Hampshire corporations. These are the only alleged physical contacts by the defendants with this State.

The three visits by Mannesmann representatives to Centronics do not, in and of themselves, constitute sufficient contacts with the State of New Hampshire on which to base jurisdiction. Clearly, these contacts are not sufficient to meet the fairness requirement. There were very few visits, and the only sale was probably procured for the purpose of attempting to establish jurisdiction. The cause of action in no way originates from the New Hampshire contacts of the defendants with the plaintiff.

In *Seymour v. Parke, Davis & Co.,* 423 F.2d 584 (1st Cir. 1970), the First Circuit Court of Appeals upheld this court's dismissal for want of jurisdiction where the defendants' physical contacts with the State were greater than those here. However, the subject matter of the complaint in that case had no connection with the State of New Hampshire and bore no relation to the defendants' contacts with the State. The plaintiff was the local administrator for the estate of a Massachusetts decedent and brought suit in New Hampshire because the Massachusetts statute of limitations had already tolled.

In *Mulhern v. Holland America Cruises, supra,* 393 F.Supp. 1298, a New Hampshire

plaintiff sought to sue a corporation which was incorporated in the Netherland Antilles with a principal place of business in New York. The theory on which the plaintiff based its claim was that a travel agent in New Hampshire who sold the plaintiff the cruise package provided the necessary state contacts. I ruled that this was not a jurisdictionally sufficient contact with the State and that the cruise company could not have foreseen that it would be sued because of such an inconsequential relationship. Further, the alleged tort arose on the high seas and had nothing to do with the State of New Hampshire.

*International Shoe* itself was decided on this last point. The unemployment tax which the State of Washington sought to levy on the company directly related to the sales efforts of the salesmen who provided the contact on which jurisdiction was based. *International Shoe Co. v. Washington, supra,* 326 U.S. at 320, 66 S.Ct. 154. "The obligation which is here sued·upon arose out of those very activities." *Op. cit.*

It is true that Centronics does allege that the visits by Mannesmann representatives were part and parcel of the conspiracy against it, but the plaintiff admits that the defendants' representatives visited Centronics at the plaintiff's insistence and not to pursue any scheme of their own. In fact, the defendants were hesitant to visit Centronics. Schaller letter, February 2, 1976. It can be reasonably inferred that Centronics' purchase of a Mannesmann machine was a deliberate attempt to create a sufficient contact for the suit which all expected. Schaller letter of February 2, 1976.

I have previously held that, where the defendants' only contact with the State was that solicited by the plaintiff and where the contact was minor, the contact was an insufficient basis on which to base jurisdiction. *Acme Engineering, Inc. v. Ceramic Coating Co., supra,* 397 F.Supp. 875. That holding applies here.

If state contacts were the sole consideration, I would hold that they were not sufficient to ground jurisdiction.

The plaintiff takes the position, however, that, since defendants are alien, it is not their contacts with the State that should control, but that their contacts with the country as a whole must be considered. Mannesmann has not denied that they have contacts throughout the United States, and it seems evident that, as a group, the conglomerate has substantial United States sales and other contacts in various parts of the country. This "national contacts" theory has been considered by other courts. *Cf. Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 n.2 (7th Cir.. 1975) (decided on other grounds); *Graham Engineering Corp. v. Kemp Products, Ltd.,* 418 F.Supp. 915 (N.D.Ohio 1976) (considered, but decided on basis of sufficient contacts with the State); *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287 (D.Conn.1975) (jurisdiction found on this basis); *Gerber Scientific Instrument Co. v. Barr & Stroud Ltd.,* 383 F.Supp. 1238 (D.Conn.1973) (held that use of United States patent laws was insufficient grounds on which to base jurisdiction in that district); *Engineered Sports Products v. Brunswick Corp.,* 362 F.Supp. 722 (D.Utah 1973) (alien status considered as factor in finding jurisdiction); *Holt v. Klosters Rederi A/S,* 355 F.Supp. 354 (W.D. Mich.1973) (jurisdiction found on this basis); *Alco Standard Corporation v. Benalal,* 345 F.Supp. 14, 24–25 (E.D.Pa.1972) (jurisdiction found on this basis under Federal securities acts); *Edward J. Moriarty & Co. v. General Tire and Rubber Co.,* 289 F.Supp. 381, 390 (S.D.Ohio 1967) (decided on other grounds); *First Flight Company v. National Car Loading Corporation,* 209 F.Supp. 730, 736–737 (E.D.Tenn.1962) (alien status considered as factor in finding jurisdiction); *AG–Tronic, Inc. v. Frank Paviour Ltd.,* 70 F.R.D. 393 (D.Neb.1976) (national contacts theory accepted, but the State's long arm statute had a "doing business" requirement which the defendants did not meet).

One of the principal reasons advanced for this position is that corporations who are headquartered in foreign lands are no more inconvenienced by a trip to one state than another. Although this may not always be true, here, New Hampshire, as an Eastern

Seaboard state is as convenient as any which does not have an international airport.

Another argument made in support of this theory is that it is possible for a foreign corporation to have very substantial contacts with the nation as a whole in different states without having sufficient contacts with any one state so as to give that state jurisdiction. Such a corporation could commit serious torts or contract breaches without ever having enough contacts with any one forum to give those injured an opportunity to seek redress. In *Engineered Sports Products v. Brunswick Corp., supra,* 362 F.Supp. at 728, the court said:

> Due process or traditional notions of fair play and substantial justice should not immunize an alien defendant from suit in the United States simply because each state makes up only a fraction of the substantial nationwide market for the offending product.

Plaintiff's theory has not yet been generally accepted and there is no specific statutory authority for it. Congress could well have passed a statute stating that jurisdiction over aliens will be based on their contacts with the nation as a whole just as it declared that an alien may be sued in any district for the purpose of venue. 28 U.S.C. § 1391(d).

■ But in this age of multinational conglomerates' doing business on an international scale, plaintiff's position has merit, and I specifically rule that where an alien defendant is sued by an American plaintiff, and where there is no particular inconvenience due to the specific forum state, the fact that the defendant is an alien and that there is no other forum in which to litigate the claim should be taken into consideration for purposes of determining whether a finding of jurisdiction meets the requisite constitutional standards of fair play.[1]

There is another basis on which jurisdiction is claimed for New Hampshire. There is a recent trend in many states to expand their long arm statutes to include acts other than those of the traditional "doing business" standard. 2 *Moore's Federal Practice* ¶ 4.41–1[3] at 1291.50. "[C]ommon to all these state long-arm or minimum-contact statutes is the concept of basing jurisdiction over the nonresident defendant upon the doing of some act within the state or *some act which has an effect within the state.*" 2 *Moore's Federal Practice* ¶ 4.41–1[3] at 1291.51 (Emphasis added.). One basis for these new statutes is the commission of a

1. That national contacts should be the ultimate consideration when an alien is sued under a Federal statute makes additional sense. The court in *First Flight Company v. National Carloading Corporation, supra,* 209 F.Supp. at 736–737, said:

> One fundamental principle of the Anglo-American law of jurisdiction is that a sovereignty has personal jurisdiction over any defendant within its territorial limits, and that it may exercise that jurisdiction by any of its courts able to obtain service upon the defendant. This principle has long been applied to the states under the due process clause of the Fourteenth Amendment. In the case of corporations, the requirement of "presence" has given way to other standards such as consent to being sued within the state, "doing business" within the state, and finally to the having of such "minimum contacts with the state that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." The basic principle, however, has remained unchanged.

> What has frequently been overlooked is that this same basic principle has long been applied to the United States itself, so that the United States is deemed to have personal jurisdiction over any defendant within the United States. Because of this oversight, and by analogy to the application of the basic principle to the states, there is a line of cases apparently denying the validity of an exercise of personal jurisdiction by a federal court over a defendant present within the United States unless the defendant is also present (or "doing business," etc.) within the district in which the court is held. In other words, the restrictions of the Fourteenth Amendment upon state jurisdiction have been applied by these cases to federal jurisdiction. The anomaly here lies not only in overlooking the principle that the United States may exercise personal jurisdiction over any defendant within the United States, but also in limiting federal action by a constitutional provision applicable only to state action.

tort. New Hampshire's long arm statute includes such a provision. NH RSA 300:14.[2]

In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court held that a Texas insurance company was subject to the jurisdiction of a California court under a long arm statute applicable to out-of-state insurance companies which insured local residents. Even though the insurance company did not meet the "doing business" standards, the Court held that it was within the notions of fair play required by *International Shoe*. The Court stated:

> It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. *Id.* at 223, 78 S.Ct. at 201.

That case can be distinguished on the grounds that it involved a contract, not a tort as is involved here, but the Court's reasoning applies with equal vigor to the alleged tort in this case. New Hampshire's interest in protecting its corporate employers from the predatory actions of an alien corporation is at least equal to California's interest in protecting its residents insured by a Texas company. Centronics would be far more inconvenienced if it were forced to sue in Germany, where it is not clear that an action would lie at all, than the California insured would be by a trip to Texas.

In *Clinton Russell v. Mannesmann Export AG and Mannesmann Pipe and Steel Corp.*, C.A. No. 76–86 (D.Del. 5/25/77), the court

determined that Mannesmann did not come within the coverage of the State's "doing business" long arm statute. The case is distinguishable because Mannesmann does come within New Hampshire's "tort" long arm statute unless such a holding would be constitutionally impermissible.

In *I. S. Joseph Company, Inc. v. Mannesmann Pipe and Steel Corporation, et al*, 408 F.Supp. 1023 (D.Minn.1976), the State's long arm statute was interpreted as not applying to an antitrust complaint brought against Mannesmann. In reaching its decision, it relied on a previous case from the same district, *State of West Virginia v. Morton International, Inc.*, 264 F.Supp. 689 (D.Minn.1967), which held that a conspiracy to violate the antitrust laws entered into outside of the jurisdiction was not "doing business" for purposes of the Sherman and Clayton Antitrust Acts. The court rejected the theory that, because Mannesmann had conspired to violate the antitrust laws to the detriment of plaintiff, a Minnesota corporation, it had committed a tort in whole or in part in Minnesota. This court disagrees with both holdings.

The Minnesota cases and the Delaware case strengthen the plaintiff's contention that Mannesmann, as an alien corporation, will be free to conduct substantial operations in this country without ever being subject to process in any one jurisdiction if the effect of its alien status is not weighed in determining whether jurisdiction is proper here.

In a multidistrict litigation case, *Maricopa County v. American Petrofina, Inc.*, 322 F.Supp. 467 (N.D.Cal.1971), the court upheld Arizona jurisdiction over a Los Ange-

---

**2.** NH RSA 300:14 is set out below.

If a foreign corporation makes a contract to be performed in whole or in part by either party in New Hampshire, or if such foreign corporation commits a tort in whole or in part in New Hampshire, such acts shall be deemed to be doing business in New Hampshire by such foreign corporation and shall be deemed equivalent to the appointment by such foreign corporation of the secretary of the state of New Hampshire and his successors to be its true and lawful attorney upon whom may be served all lawful process in

any actions or proceedings against such foreign corporation arising from or growing out of such contract or tort. The making of such contract or the committing of such tort shall be deemed to be the agreement of such foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served on the foreign corporation at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.

les resident who allegedly participated in a conspiracy to fix prices of liquid asphalt in Arizona. It was held that the defendant had sufficient minimal contacts with Arizona for application of its long arm statute, even though he had not visited the State, had no residence in the State, maintained no offices or agents in the State, and transacted no business in the State.

Had the alleged conspiracy been formed while the parties were gathered together in Arizona, the effects of it would be no different from those generated by conspiracy agreed upon in London. A conspiracy, no matter where made, creates a destructive force which extends into the state. If it be recognized that a conspiracy sets in motion real if intangible forces, then the . . . tests of minimal contacts . . . are met. *Maricopa County v. American Petrofina, Inc., supra,* 322 F.Supp. at 469.

In *Paul I. Murphy v. Erwin-Wassey, Inc.,* 460 F.2d 661 (1st Cir. 1972), this Circuit considered the question of whether the District Court for the District of Massachusetts had jurisdiction over a foreign corporation. The plaintiff alleged that the defendant corporation intentionally misrepresented the true amount of certain billings thereby deceiving him into accepting less than he was entitled to in commissions. He asserted jurisdiction under the Massachusetts long arm statute and demanded an accounting and monetary damages. The defendant contended that its contacts with the State of Massachusetts were insufficient for the court to claim jurisdiction. The contract in issue was made in New York. The defendants had no agents or other physical contacts with Massachusetts, but the alleged misrepresentations had been communicated through the mails and over telephone wires into the State. In granting jurisdiction, the court, by Judge McEntee, said:

We believe that the same is true of the mailing of a fraudulent misrepresentation into a state. We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger. See *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970); *R.F.D. Group Ltd. v. Rubber Fabricators, Inc.,* 323 F.Supp. 521 (S.D.N.Y.1971). Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state. The element of intent also persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). We note, in this connection, that, under the controlling Massachusetts choice of law rule, substantive Massachusetts law will govern the adjudication of plaintiff's tort claim, see *Doody v. John Sexton & Co.,* 411 F.2d 1119, 1121 (1st Cir. 1969), and that, therefore, Massachusetts is not an inconvenient forum. *Id.* at 664.

A conspiracy deliberately aimed at a plaintiff in New Hampshire is analogous to the invasion of Massachusetts by mail and telephone calls. The defendants' alien residency in this case makes jurisdiction here even more compelling. Additionally, the defendants' actual physical contacts with the state in this case are greater than they were in *Murphy.*

Plaintiff alleges a conspiracy to directly interfere with its business in New Hampshire. This alleged tortious conduct was aimed specifically at Centronics whose sole and principal place of business is New Hampshire. Plaintiff argues that the defendants must have known that the result would be injury to the plaintiff here and

that it reasonably should have expected to be sued in the State of New Hampshire.

The limited discovery in which the parties have engaged to date has already demonstrated that there is a basis for the allegation that Centronics' computer printer business was the direct target of Mannesmann. Plaintiff has uncovered a proposed business plan, Exhibit 31, and various correspondence dealing with the relative competitive positions of Mannesmann and Centronics.[3]

The defendants, citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), argue that "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws." The question in *Hanson* was whether the estate of a Florida woman who had made a Delaware trust company trustee of certain securities and had made the trust agreement in Delaware, could sue the trust company in Florida. The court held that the trust company did not have sufficient affiliation with Florida so that its courts could exercise jurisdiction over it. *Id.* at 250–253, 78 S.Ct. 1228. That case did not, as this one does, involve alleged torts aimed specifically at a resident of the forum state.

The fact that the defendants did not set foot in the State in order to commit the alleged tort should not deter us. The situation is analogous to products liability cases where the defective product is manufactured elsewhere and injures someone in New Hampshire. In *Look v. Hughes Tool Co., supra,* 367 F.Supp. 1003, I ruled that a foreign manufacturer was subject to New Hampshire's jurisdiction when its product injured the plaintiff in this State even though there were no personal contacts with New Hampshire. This rationale finds additional support in *Restatement (Second) of Conflicts* § 50 which states: [4]

*Foreign Corporations—Causing Effects in State by Act Done Elsewhere*

the state may exercise the same judicial jurisdiction over the actor, or over the one who caused the act to be done, as to causes of action arising from these effects as it could have exercised if these effects had resulted from an act done within its territory. Provided, in other words, that the doing of the act in the state would have afforded the state judicial jurisdiction . . . as to causes of action arising from the act, the doing of the act outside the state with the intention of causing effects in the state will give the state judicial jurisdiction over the actor, or the one who caused the act to be done, as to causes of action arising from these effects. So one who intentionally shoots a bullet into a state is as subject to the judicial jurisdiction of the state as to causes of action arising from the effects of the shot as if he had actually fired the bullet in the state. Similarly, an insurance company which solicits through the mails the purchase of an insurance policy and thereafter mails the insured premium notices and the like is as subject to the judicial jurisdiction of the state as to causes of action arising from the policy as if it had sent an agent into the state to solicit the policy and to present the premium notices to the insured. (Citations omitted.) *Restatement (Second) of Conflicts* § 37, comment a at pp. 156–157.

---

**3.** Letter of December 12, 1975, from Hendrischk to Schaller; letter of February 5, 1976, from Schaller to Hendrischk; letter of February 9, 1976, from Schaller to Ullrich.

**4.** The comment to this section refers back to the comment on section 37 which states:

a. *Rationale.* A state has a natural interest in the effects of an act within its territory even though the act itself was done elsewhere. The state may exercise judicial jurisdiction on the basis of such effects over the individual who did the act, or who caused the act to be done, provided that the nature of these effects and of the individual's relationship to the state are such as to make the exercise of jurisdiction fair to the individual and reasonable from the standpoint of the international and interstate systems. This jurisdictional basis is limited to causes of action which arise from such effects of the act as occur within the state. The causing of effects in a state by reason of an act done elsewhere does not create a sufficient relationship between the individual and the state to give the state judicial jurisdiction over him as to causes of action that do not arise from these effects. The problem dealt with in this Section frequently arises in the field of product liability.

\* \* \* \* \* \*

The act may have been done with the intention of causing effects in the state. If so,

A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.

The allegations of deliberately interfering with the plaintiff's contractual relationships, defaming its good name, and unfairly competing with it in violation of the antitrust statutes were directly aimed at the plaintiff in New Hampshire. It was the American business of the plaintiff that defendants sought to capture. It cannot avoid the consequences of its deliberate tortious acts by hiding behind jurisdictional technicalities. The traditional notions of justice and fair play should not be used to extend a cloak of immunity over deliberate torts merely because the defendant is an alien corporation. To do so would be to deny justice and fair play to the plaintiff.

█ · Based on the defendants' physical contacts with the State, their substantial contacts with the country as a whole, and New Hampshire's interest in protecting its corporate citizens injured as a result of torts such as those alleged here, I find that this court has jurisdiction.

The motion to dismiss for want of jurisdiction is denied.

The motion for change of venue for *forum non conveniens* is denied.

I recognize that this ruling may be at odds with the traditional concepts of jurisdiction and find that the final resolution of this issue will "materially advance the ultimate termination of this litigation." I, therefore, advise the attorneys that this order is appealable within ten days under 28 U.S.C. § 1292(b).

SO ORDERED.